THOMAS J. McDERMOTT v. UNION CREDIT COMPANY.

April 26, 1899.

Nos. 11,402—(5).

Libel—Mercantile Report—Payment of Debts.

A false and malicious publication, in writing or print, to the effect that a person is not prompt, but habitually slow, in the payment of his personal bills, is actionable per se, although published of him as an individual, and not in relation to his business or profession. Such a charge naturally tends to injure his standing in the community, and to lower him in the esteem and respect of his neighbors.

On Reargument.

June 28, 1899.

Same—Publication not Actionable.

Held, on reargument, that the publication, when construed in connection with the whole key to the book in which it was published, is not actionable per se.

Action in the district court for Ramsey county to recover $5,000 damages for libel. From an order, Bunn, J., overruling a demurrer to the complaint, defendant appealed. Reversed on reargument.

*Larimore & Marvin*, for appellant.

The meaning of the words cannot be enlarged by innuendo. Van Vechten v. Hopkins, 5 Johns. 211; Fry v. Bennett, 5 Sandf. 54. It is for the court to decide in the first instance whether the words are susceptible of the alleged innuendo. Woodruff v. Bradstreet, 116 N. Y. 217; Greenwood v. Cobbey, 26 Neb. 449. The publication, construed as a whole, would not be libellous per se even though defendant were a merchant or trader, much less where he is a lawyer. Spurlock v. Lombard, 59 Mo. App. 225; Woodruff v. Bradstreet,.

supra; Newbold v. Bradstreet, 57 Md. 38; Hirshfield v. Fort Worth, 83 Tex. 452; Stewart y. Minn. Tribune Co., 40 Minn. 101; Allen v. Cape Fear, 100 N. C. 397; Zier v. Hofflin, 33 Minn. 66. The words cannot be presumed to have damaged plaintiff, hence defendant is liable only if they were published with express malice, and then only for special damages, which the complaint does not allege. Stewart v. Minn. Tribune Co., supra; Platto v. Geilfuss, 47 Wis. 491; Newbold v. Bradstreet, supra; Hirshfield v. Fort Worth, supra; Walker v. Tribune Co., 29 Fed. 827; Homer v. Engelhardt, 117 Mass. 539; Gillan v. State, 96 Wis. 460. See Doyley v. Roberts, 3 Bing. (N. C.) 835; Sharpe v. Larson, 67 Minn. 428. Where recovery is sought for words because they injure plaintiff in his profession, it must be alleged that they were spoken or published of him in his professional character. Van Tassel v. Capron, 1 Denio, 250; Kinney v. Nash, 3 N. Y. 177; Gove v. Blethen, 21 Minn. 80. G. S. 1894, § 5257, has not changed the rule. Smith v. Coe, 22 Minn. 276; Fry v. Bennett, supra; Petsch v. Dispatch P. Co., 40 Minn. 291; Richmond v. Post, 69 Minn. 457. A demurrer does not admit the truth of an innuendo. Wheeler v. Haynes, 1 Per. & Dav. 55; Fry v. Bennett, supra; Kraus v. Sentinel, 60 Wis. 425. See Rex v. Horne, Cowp. 672; Pratt v. Pioneer Press Co., 35 Minn. 251; Gillan v. State, supra.

*S. L. Pierce, John H. Ives* and *Thos. J. McDermott*, for respondent.

MITCHELL, J.

This is an action for libel. Plaintiff alleges that he is an attorney at law, and as such engaged in the practice of his profession, and the complaint was evidently framed upon the theory that the alleged defamatory publication affected him in his profession or occupation as a lawyer. It appears from the complaint that the defendant was a commercial agency engaged in publishing and circulating among its subscribers, who are retail merchants, a book which purports to be

"A compilation of the actual experiences of business men in St. Paul respecting the worthiness of individuals to credit, based solely on the manner in which they pay their bills."

The book contained about 35,000 names. It contained a key to the letters used to indicate the report or rating of each individual as to the payment of his bills. This key is as follows:

"B, prompt weekly; C, prompt monthly; D, pays on demand; E, slow; F, pays when pushed; G, promises not kept; H, refused payment; I, note protested; K, left for collection; L, judgment taken; N, unrecommended credit; O, disputed bills."

The alleged libel consisted of defendant, in this book, reporting or rating the plaintiff "E," which, according to the key, meant that he was slow in payment of his bills. No extrinsic facts were alleged to enlarge the meaning of the words. This was attempted by innuendo, but it is a familiar rule of the law of libel and slander that the sense of words cannot be enlarged by mere innuendo. Neither were any facts alleged tending to show special damages. The publication is alleged to have been made falsely and maliciously, but there is no allegation that the words were published of and concerning the plaintiff in his profession as an attorney. And when it is considered that the "key," taken as a whole, impliedly negatives any charge that the plaintiff is either dishonest or insolvent, there is nothing in the publication that would necessarily or directly affect him in relation to his profession as a lawyer.

As a publication addressed to retail dealers, it presumably, if not necessarily, referred to his habit in the matter of paying his personal bills. The head and front of the publication is that plaintiff is slow in the payment of his bills, but not to the extent that his promises are not kept, or that it is necessary to place a claim in the hands of a collector, or to put it into judgment, in order to secure payment, or that he ever disputes his bills. An attorney, like any other man, may for various reasons be slow, to the extent of not paying his personal bills promptly, weekly or monthly, or on demand, and yet be not only honest and solvent, but also entirely prompt in the performance of his professional duties, and in accounting for and paying over all property or money of his clients which may come into his hands. It is possible that anything published in disparagement, however slight, of a person as an individual may incidentally affect him somewhat in his business or

profession; but it does not necessarily follow that the words are actionable, per se, as published of and concerning him in relation to his profession or business. Any such rule would open the door for a flood of vexatious litigation. To be actionable on that ground alone, the publication must be such as would naturally and directly affect him prejudicially in his profession or business. Hence our opinion is that if the publication in this case is, per se, actionable under the allegations of the complaint, it must be because it is actionable per se when published of a person as an individual, without reference to his particular profession or business.

It is familiar law that printed or written words may be actionable, which, if merely spoken, would not be actionable. And, generally stated, the law of libel is that any written or printed words are actionable which tend to blacken the memory of one who is dead, or to injure the reputation of one who is alive, and thereby expose him to public hatred, contempt, or ridicule, degrade him in society, lessen him in public esteem, or lower him in the confidence of the community, even although the words do not impute to him criminality or immorality. It is sometimes difficult to determine upon which side of the line a publication falls. It is impossible, as well as impolitic, to lay down any more definite rule than the general statement of the law already given, and then make a common-sense application of it to the facts of each case as it arises. On the one hand, it will not do to hold that everything published in disparagement of a person is actionable, or to adopt Bentham's sarcastic definition of libel as anything of which any one thinks proper to complain. But, on the other hand, everything falsely and maliciously published of another, which necessarily or naturally tends to injure his standing and good name in the community, or lower him in the confidence and respect of his neighbors, ought to be held actionable.

The case is a border one, and the question not free from doubt; but, applying this test, we think that, in this age and country, a charge that a man is not prompt, but habitually slow, in the payment of his personal bills,—especially those contracted with his grocer, butcher, and other retail dealers, for his personal or family expenses,—would naturally and almost inevitably injure his stand-

ing in the community, and lower him in the esteem and respect of his neighbors. We therefore hold that the words complained of were actionable per se, although published of the plaintiff as an individual, and not in relation to his business as an attorney.

Order affirmed.

COLLINS, J.

I concur in the result, but do not feel quite prepared to say that printed matter in which a practicing attorney is charged with being slow in the payment of his debts does not tend to injure him in his professional standing, and lower him in that confidence of the community which every attorney must have, to succeed. My impression is decidedly to the contrary.

On Reargument.

June 28, 1899.

MITCHELL, J.

Upon the original argument we considered it a very close and doubtful question, as was indicated in the opinion filed, whether the publication complained of was actionable per se. It was this doubt, increased by subsequent reflection, which induced us to grant a reargument. After examining the additional arguments, and giving the subject all the consideration of which we are capable, we have come to the conclusion that we ought to recede from our former views, and hold that the publication is not per se actionable at all.

While general definitions of defamatory language may be given, yet, from the very nature of the subject, it is impossible to mark out the exact line of cleavage between what is and what is not actionable language in every case. Moreover, in determining whether language, either written or spoken, is actionable, the courts have two opposite evils or inconveniences to guard against. The first is the danger of encouraging a spirit of vexatious litigation by affording too great a facility for this species of action; the second is the danger of refusing legal redress to those who have been appreciably injured by the wrongful acts of others. Any discommendatory language used of and concerning a person is liable

to do him injury, although such injury is often inappreciable in law.    But nothing is better settled than that much discommenda-tory language, whether written or spoken, is not actionable per se, because not calculated to do the person of whom it is published any injury appreciable or cognizable by the law.    The courts have, for practical reasons and considerations of public policy, to draw the line somewhere, and this has often to be done by a gradual process of exclusion and inclusion, depending upon the particular facts of each case as it arises.

In order to determine what the word "slow" means in the book published by the defendant, we must consider the whole key, in order to ascertain what the word asserts as well as what it nega-tives by implication.    Thus considered, it by clear implication as-serts that the plaintiff does pay all his bills, and that he does this without being "pushed," and without the necessity of leaving the claim in the hands of some one for collection or taking judgment against him; that he does not dispute his bills, refuse payment, or break his promises to pay; neither does he let his note, when he gives one, go to protest, nor is his credit unrecommended; but, on the other hand, he does not pay promptly weekly or monthly, or always on demand.

Our final conclusion is that, thus construed and limited, there is nothing in the word "slow" that tends per se appreciably to injure a man's credit or his reputation for integrity and honesty, or affect his standing in the community in the esteem and respect of his neighbors.    It is a matter of common knowledge that, on account either of limited means, lack of ready money, or of mere inattention, the same thing might be truthfully said of a great many people in every community who stand very high in the es-teem and respect of their neighbors, and whose credit and reputa-tion for honesty and integrity are unquestioned.    Moreover, to hold such language actionable per se would open the door for a flood of merely vexatious litigation.

The order contained in the former opinion affirming the order appealed from is vacated, and the order appealed from is hereby re-versed.

COLLINS, J. (dissenting).

I remain quite decidedly of the impression that the publication in question tended prejudicially to affect plaintiff professionally, and for that reason was libellous, and actionable per se.

BUCK, J.

I agree with COLLINS, J.