DALLAVO *v.* SNIDER.

1. LIBEL AND SLANDER—SPOKEN WORDS—WHEN ACTIONABLE.

   To say of a business man " He is not worth a dollar; everything is in his wife's name" is not slanderous per se unless said of and concerning him in his business.

2. SAME—WORDS IN RELATION TO BUSINESS.

   Plaintiff, a mill owner and merchant, having signed an indemnity bond in favor of the sureties on the liquor bond of another, defendant said to the sureties " He is not worth a dollar; everything is in his wife's name." *Held*, that the words were not spoken of and concerning plaintiff in his business.

3. SAME—ISSUES.

   Where the charge is the uttering of slanderous words concerning plaintiff's standing in his business, the allegations of the declaration must be sustained by proof that the words were actually spoken of and concerning plaintiff in relation to his business, in order to make them slanderous per se.

Error to Mecosta; Palmer, J. Submitted January 4, 1906. (Docket No. 10.) Decided April 3, 1906.

Case by John Dallavo against Jacob Snider for slander. There was judgment for plaintiff for nominal damages only, and he brings error. Affirmed.

*Cogger & Broomfield*, for appellant.

*McKnight & McAllister* and *Joseph Barton*, for appellee.

BLAIR, J. This is an action of slander. The slanderous publication relied upon is charged in the declaration as follows, viz.:

" Did on, to wit, the 1st day of December, A. D. 1902, at the said village of Remus in the county and State aforesaid, in a certain discourse which the said defendant then and there had with one Frank Simon, in the presence

and hearing of divers good and worthy persons, design-edly, falsely, and maliciously, speak, publish, and declare of and concerning the said plaintiff in connection with his said trade, business, and employment, these scandalous, malicious, and defamatory words, to wit: 'Them indem-nity bonds (meaning thereby the indemnity bonds given by one James R. Kaley upon which this plaintiff had become indemnity bondsman) are no good. He (meaning the said plaintiff) is not worth a dollar (meaning that plain-tiff was not collectible and was insolvent). His property (meaning said plaintiff's property) is all in his wife's name.'"

The plaintiff gave testimony as to his business relations, which was undisputed, tending to show that at the time of the publication of the alleged slanderous words, he was the owner of and operating a mill at Wyman, some 14 miles from Remus, and was buying and selling logs, lum-ber, and ties, and manufacturing and selling lumber and shingles and ties in the country around Remus.

" In my mercantile business and in buying and selling timber and logs, I did some business on credit. I made some purchases without paying the cash immediately and, practically, I could deal more advantageously in that way. * * *

" In 1902, about in August, I bought a certain amount of interest in the Mansfield Mercantile Company at Remus. * * * The Mansfield Mercantile Company was a general store handling dry goods, clothing, shoes, groceries, crockery, etc. That was a stock company and I put $7,000 of money in there. I continued to have that interest in that business until some time in February or March, 1903. I was vice president of the company."

The circumstances surrounding the speaking of the al-leged slanderous words were, substantially, as follows: The plaintiff's son-in-law, Kaley, was engaged in the saloon business and had given to the sureties upon his liquor bond an indemnifying bond signed by plaintiff to induce them to become such sureties. One of the sureties testified that after he signed the liquor bond he had a talk with defendant at the saloon of one Theisen.

" Jacob Snider says to me, ' You went Kaley's bond?'

I says, 'Yes, sir.'   'Well,' Jake says, 'I think you made a great mistake.'   He says, 'He is not worth anything.' I says, 'I got Mr. Dallavo's— He gave me his indemnifying bond.'   'Well,' he says, 'he is not worth anything, he is not worth a dollar, everything is in his wife's name.'"

The other surety testified to substantially the same conversation.   There was no proof or claim of special damages.   The defendant introduced no evidence, but rested at the close of plaintiff's case.

Plaintiff's counsel requested the court to charge the jury, amongst other things, as follows:

"In this class of cases, slander per se, it is not necessary for the plaintiff to show malice.   Malice is a presumption of law from the publication of words actionable per se, and I charge you that these words are actionable per se and that malice is presumed.   Malice is a presumption of law from the false and injurious nature of the charge.

"In this case the words are actionable per se and it is not necessary in this case for the plaintiff to allege or prove any actual damages.   It is legally presumed that damages result from the utterance of such words, and that they cause injury as a natural and immediate consequence."

The trial judge refused to give either of these requests but instructed the jury that the words were not actionable per se, and that malice must be proved, upon the ground that it did not appear that the words were spoken of the plaintiff, as charged in the declaration, with reference to his business.

"So we must go further than the words themselves and ascertain as far as we can from the evidence what were the surrounding circumstances that led up to the talk, in order to determine what was the spirit in which these words were used," etc.

The important question in this case is whether the words counted upon were slanderous per se.   If the words were slanderous per se, the charge of the court was given upon an erroneous theory, which affected the entire charge. If the words were not slanderous per se, the charge was

too favorable to plaintiff, since no special damages were proved.

In determining whether words are slanderous per se, a distinction has generally been recognized between words written or printed and words spoken. An exception to this rule has, however, been made in the case of words affecting a person in his profession or business, and it has been held that in such cases the distinction does not exist. The principle upon which this exception rests was questioned by Mr. Justice CHRISTIANCY in *Weiss* v. *Whittemore*, 28 Mich. 366, and we are satisfied that it is unsound. See *Foster* v. *Scripps*, 39 Mich. 376; *Tryon* v. *Evening News*, 39 Mich. 636.

The law is well settled that it is libelous per se to publish of and concerning a merchant false statements touching him in his business and naturally tending to injure him therein. And it might well be held that a statement of a merchant's insolvency printed in the public press, even though connected with some matter entirely distinct from his business, was libelous per se, since the inevitable tendency must be and is intended to be injurious to him in his business. But whatever the rule may be in such a case, we are satisfied that in a case where the charge is the uttering of slanderous words the allegations of the declaration must be sustained by proof that the words were actually spoken of and concerning the plaintiff in relation to his business, in order to make them slanderous per se, and this rule, we think, is sustained by the weight of authority. *Van Epps* v. *Jones*, 50 Ga. 238; *Van Tassel* v. *Capron*, 1 Denio (N. Y.), 250; *Oakley* v. *Farrington*, 1 Johns. Cas. (N. Y.) 130; *Cassavoy* v. *Pattison*, 93 App. Div. (N. Y.) 370; *Smedley* v. *Soule*, 125 Mich. 192.

In view of our conclusion that the trial judge did not err in holding that the words proved were not slanderous per se, the other assignments of errors become immaterial.

The judgment is affirmed.

MONTGOMERY, OSTRANDER, HOOKER, and MOORE, JJ., concurred.