HARRY STANNARD *vs.* WILCOX & GIBBS SEWING
MACHINE COMPANY AND ROYAL
G. BEST.

*Libel: words affecting one in his business, credit or profession;
when actionable per se; malice.*

"A false and malicious printed or written publication which imputes conduct, or qualities tending to disparage or degrade the plaintiff or expose him to contempt, ridicule or public hatred, or prejudice his private character, or credit, is libelous *per se*."                    p. 154

In order for words not ordinarily actionable in themselves to be libelous *per se* because affecting the plaintiff in respect to his business, occupation or profession, it is necessary that the words have a reference to him in that capacity.        p. 158

Words which impute to persons engaged in business, such as merchants, traders and others in occupations where credit is essential to success, non-payment of debts, want of credit or

actions which tend to lessen their credit are libelous *per se* unless they are privileged communications.         p. 158

S. was not in business on his own account, but was the local manager of a non-resident corporation; a letter was written to his employers calling attention to the fact that S. had neglected and refused to pay a bill for goods ordered by his wife, for whose payment he was responsible; the statements in regard to him in no way related to the manner of his performance of his duties as manager for his employers or charged him with being unfit for their proper performance; nor did he lose his position because of the letter in question. In a suit brought by him, against the writers of the letter, for libel, it was not stated or suggested that he had any occasion for the use of credit or that his credit had been in any way impaired or affected. *Held* that the letter could not be regarded as actionable *per se* and the declaration was demurrable.                                    p. 159

The demurrer admitted that the letter was actuated by malice, but this does not justify a Court in departing from the well established principles governing the law of libel.     p. 159

*Decided May 10th, 1912.*

Appeal from the Court of Common Pleas of Baltimore City (BOND, J.).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, BURKE, THOMAS and STOCKBRIDGE, JJ.

*Henry H. Dinneen,* for the appellant.

*Charles McHenry Howard* for the appellees.

STOCKBRIDGE, J., delivered the opinion of the Court.

In the year 1911 Harry Stannard was the local manager in the City of Baltimore of the Holmes Electric Protective Company, a corporation having its main office in the City

of New York. In July of that year that company received
a letter over the signature of "Wilcox & Gibbs S. M. Co.;
R. G. Best, Mgr.," which read as follows:
"*Gentlemen*:

On July 15th, 1910, Mrs. H. S. Stannard, wife of your local
manager here, purchased from us, on the instalment plan, a
sewing machine valued at $60. After paying four months'
instalments, they declined to make any further payments, and
requested us to remove the machine; this after they had had
some six months. We, of course, refused to accept the return
of the machine, as we do not do business that way, and have
made several requests of Mr. Stannard to pay what was owing.
As long ago as last December he promised the writer he would
do this; since which time, however, we have not received a
penny from him, and we are writing him today that unless
all back payments are in this office within one week from today
the matter will be placed in the hands of our attorney for
settlement. If this is of any interest to you, and you do not
desire to see one of your managers brought up in a civil suit
for goods purchased on the instalment plan, we would suggest
that you communicate with him to the effect that he take some
steps towards meeting a just obligation incurred by his wife,
and which he is legally responsible for.

Thanking you in advance for whatever you may determine
to do in the matter, we are,

Yours truly,

WILCOX & GIBBS S. M. Co.,

R. G. BEST, Mgr."

Not unnaturally, Mr. Stannard upon being made aware
of the writing of this letter, felt aggrieved, and, accordingly,
in September instituted an action against the Wilcox & Gibbs
Sewing Machine Company and Royal G. Best to recover
damages for an alleged libel. The defendants demurred, the
demurrer was sustained and a judgment of *non pros* entered
in default of a sufficient declaration and judgment for
defendant for costs, and the case now comes to this Court
in that shape for review.

The *narr.* makes no claim of any special damage caused the plaintiff by reason of the writing and sending of the foregoing letter, but insists that it is actionable *per se.*

It is perfectly apparent that the purpose of this letter was simply to aid the defendant in the collection of a debt claimed to be due and owing it; that the writer was not prompted by any desire to make an application of the Golden Rule, nor was he so far interested in the employer of the plaintiff that there was any altruistic motive behind the sending of the communication, but, however reprehensible or disingenuous the communication may have been, this Court is only concerned in the narrow, legal proposition; is the letter dated July 26th, 1911, and written by one of the defendants in the name of both libelous *per* se, so as to make either or both of the defendants liable in damages to the plaintiff.

In the case of *Weeks* v. *The News Publishing Co.,* 117 Md. 126, all of the earlier decisions in this State were carefully reviewed, and the general principle stated as to what constituted a libelous publication, as follows:

"A false and malicious printed or written publication which imputes conduct, or qualities tending to disparage or degrade the plaintiff or expose him to contempt, ridicule or public hatred, or prejudice his private character, or credit are libelous *per se,*" adopting the language of JUDGE BURKE in *Goldsborough* v. *Orem,* 103 Md. 681.

Substantially the same rule has been laid down in a large number of cases in various states of the country. It is practically conceded that the letter which forms the basis of the action in this case would not have afforded a sufficient ground of action for the plaintiff merely as an individual; but what is claimed for it is, that the alleged libel was one tending to affect the plaintiff in his business, and that for that reason this action may be maintained.

The appellant has cited a large number of authorities, with regard to a number of which a mere statement will show their inapplicability; thus in the *Arrow Steamship Company* v. *Bennett,* 73 Hun. 81, special damage was alleged in the declaration, and because of that fact the demurrer was overruled.

In the case of *Morgan* v. *Andrews,* 107 Mich. 33, it was alleged that by reason of a letter which the defendant had written the plaintiff had lost a certain valuable contract, which loss was set up as matter of special damage, and by reason of that fact a recovery was permitted. In the case of *Fowles* v. *Bowen,* 30 N. Y. 20, evidence was adduced to show special damage, and, therefore, the action was held maintainable. In *Hardy* v. *Williamson,* 86 Ga. 551, recovery was had for a publication charging the engineers of a contracting company with an over-valuation of property, but the recovery was allowed largely on account of the phraseology of the Georgia Statute. And in *Barron* v. *Smith,* 101 N. W. R. 1106, a recovery was had because of the express provision of the South Dakota Statute. Numerous cases were cited where suit had been brought against commercial agencies. In *Windisch-Muhlhauser Brewing Company* v. *Bacon,* 53 S. W. R. 520, a false report that the plaintiff in that case had failed to pay a debt, was held not to be actionable *per se,* but any special damage which could be shown as the result would afford a ground for recovery. In *McDermott* v. *The Union Credit Co.* 76 Minn. 86, a publication that a certain man was slow pay, was held in an action for libel to afford a good ground for such an action, but upon a re-argument in that case the Court reversed its original holding and held it not liable. In two Texas cases, *Sanders* v. *Hall,* 55 S. W. R. 594, and *Sanders* v. *Edmonson,* 56 S. W. R. 611, a letter was written in each case to a creditor of the plaintiff, saying substantially that the plaintiff was about to leave the country, that he was unable to pay his debts, and that if he did leave the creditor's claim would be worthless, and in each of these cases the letters were held not libelous *per se,* but

if special damage could be shown, that recovery might be had for such publication.    The case of *Johnson* v. *Shields,* 25 N. J. L. 116, was an action for slander, the language in that case having been spoken of an officer of the company, in his official capacity, and charged that he had sold the property of the company and pocketed the money; this was held in effect to charge a crime, and the language was therefore actionable *per se;* so, too, in *Rammell* v. *Otis,* 60 Mo. 365, in an action of slander containing two counts, the first charged the defendant with having accused the plaintiff of larceny, and the second, with keeping false and dishonest books in his profession as a miller, and it was held in that case that in order to support this second count, it was necessary to show special damages.    Closely akin to this case is that of *McCauley* v. *Elrod,* 27 S. W. R. 867, also a slander case, where the language "I discharged M. for stealing" were held actionable *per se,* because they imputed a crime; but that the words "M. beat B. out of one thousand dollars when he worked for B" and "he robbed you B. out of one thousand dollars while he worked for you," were held not to be actionable *per se* because not imputing a felony, and that, therefore, special damage must be alleged and shown.

Just what is meant by the expression used in various decisions, "a libel upon a person in his business" will be best gathered from a consideration of some of the cases. In *Homer* v. *Engelhardt,* 117 Mass. 539, it was said of an individual that he had availed himself of the prohibitory law to defeat an indebtedness for liquor which had been sold to him, and he brought a suit for the libel, but he failed to recover because the law gave him the right to interpose such a defense, and, therefore, it was not libelous to say of him, that he had done that which the law permitted him to do. The same rule was followed in *Hollenbeck* v. *Hall,* 103 Iowa, 214. In that case a letter had been written saying that a certain man had owed for several years for medical services that had been rendered to him; that his attention had been frequently called to such indebtedness to no purpose; that

being sued therefor and "Having no defense he cowardly slunk behind the Statute of Limitations," and that such a course was not in accordance with the writer's idea of integrity; but in this case the plaintiff failed to recover because the Statute of Limitations was one which the law authorized to be pleaded. Another similar case to this is that of *Donaghue* v. *Gaffy*, 54 Conn. 257. The case of *Jones* v. *Greeley*, 25 Fla. 638, probably goes as far as any case in the direction of sustaining such an action, and much farther than most of the cases. In that case the publication concerning a man, who was a banker and money-lender, that he was "pretending to be a philanthropist and benefactor, when in fact he was a grasping and penurious gradgrind, whose greed had inflicted untold sorrow on the widow and orphan," was held libelous of him as a money-lender, though doubt was expressed whether it was so as an individual, a distinction that is somewhat difficult to appreciate or follow.

The cases which have sustained an action for libel written or published of a man in his business may be fairly illustrated by *Obaugh* v. *Finn*, 4 Ark. 110, in which case a publication appeared in the newspaper cautioning the public against Finn, stating him to be a plasterer by trade, who had absconded without paying any of his numerous debts, and of swindling O'Baugh out of $55 advanced on a promise to do certain work; and *Carpenter* v. *Hammond*, 1 N. Y. St. 551, where the defendant issued a circular charging the plaintiff with being in debt, with improper business methods and unsound and visionary business ideas, with spending trust money, with doctoring accounts, with being a treacherous wretch, "having a shallow head and unprincipled heart," and with secreting defendant's assets; and the case of *Fitzgerald* v. *Redfield*, 51 Barb. 491, where it was said of a man who was a mason by trade, "he is no mechanic, he can not make a good wall or do a good job of plastering, he is no workman, he is a botch." In each of all of these cases the words spoken or written had a direct relation to the business which the party aggrieved was carrying on.

The test by which all such cases are to be passed upon, and which has been adopted with approval in this State, is that laid down in *Lumby* v. *Allday,* 1 Compton & Jervis, 301, and adhered to in *Miller* v. *David,* L. R. 9, C. P. 118, and is expressed as follows in *Wilson* v. *Cottman,* 65 Md. 190. "the actionable character of the language must be tested by the question, whether it imputes to the plaintiff the want of any qualification such as a clerk ought to have, or any misconduct which would make him unfit to discharge faithfully and correctly the duties of a clerk."

To the same effect is *Nichols* v. *Daily Rep. Co.,* 3 L. R. A. N. S. 339 (116 Am. St. Rep. 796), where it is said, "It may be conceded that words charging non-payment of debts, insolvency or which tend to impute want of credit or integrity are actionable without alleging special damage when they refer to merchants, tradesmen and others in occupations where cerdit is essential to the successful prosecution, but generally these same words are not actionable *per se,* when they do not refer to persons in their office, profession, trade, business or calling." To the same effect is *Hanaw* v. *Jackson Patriot Co.,* 98 Mich. 506.

A generalization from all these cases leads to the conclusion that in order for words not ordinarily actionable in themselves to be libelous *per se,* because affecting the plaintiff in respect to his business, occupation or profession, it is necessary that the words have a reference to him in that capacity. Words which impute to persons engaged in business, such as merchants, traders and others in occupations where credit is essential to the successful prosecution of their occupation, non-payment of debts, want of credit or actions which tend to lessen their credit, are libelous *per se,* unless they are privileged communications.

In this case Mr. Stannard was not in business on his own account, he was the local manager for a non-resident corporation. It is not alleged or suggested that he had any occasion for the use of credit, or that his credit had been in any way impaired or affected. The statements in regard to him

in no way related to the manner of his performance of his duties as manager of the Holmes Electric Protective Company, or charged him with being unfit for the proper performance of them, nor did he lose his position because of the letter in question, in which case he would have sustained special damage. Under these conditions, and applying the rule of law already stated, the letter can not be regarded as actionable *per se,* and the trial Court committed no error in sustaining the demurrer.

That the letter was actuated by malice is admitted by the demurrer, and apparent from the paper itself, and deserving of the most emphatic reprobation, but that will not justify this Court in departing from well established principles upon so important a subject.

> *Judgment affirmed, with costs to the appellee.*