WROUGHT IRON RANGE CO. *et al v.* BOLTZ.

[86 South. 354. No. 21278.]

1. LIBEL AND SLANDER. *Whether language imputing dishonesty or want of credit is actionable depends on circumstances.*

   As to whether language which imputes dishonesty or lack of credit to an individual is actionable *per se*, no definite rule will govern in all cases, but the language used and the particular facts and curcumstances of each case must control.

2. LIBEL AND SLANDER. *When words "no good" are libelous per se stated.*

   When the words "no good" are used in such manner and connection as to denote that an individual is engaged in making accounts which he does not intend to pay, and is dishonest, lacking in integrity, and wholly unworthy of credit, this naturally and necessarily tends to injure his standing and good name in the community, and lower him in the confidence and respect of his eighbors, and when so used they are libelous *per se*.

3. LIBEL AND SLANDER. *Communication of libelous statement to wife of plaintiff held not a publication.*

   Communication to the wife of language defamatory of the husband's credit is not a publication when the language is used of and concerning credit growing out of a contract to which the wife is a party, and under which she is jointly liable with the husband.

4. LIBEL AND SLANDER. *Communication of libelous statement to plaintiff's agent held not a publication.*

   When an individual contracts to purchase personal property, and delegates another to act in his place and stead in receiving and dealing with such property, communication to this agent of language defamatory of the principal's credit is not a publication, when such language is used in explanation of a demand for a cash payment before delivery of the property.

APPEAL from circuit court of Stone county.

D. M. GRAHAM, Judge.

Action by G. J. Boltz against the Wrought Iron Range Company and another. Judgment for plaintiff, and defendants appeal. Reversed and rendered.

*Mize & Mize* and *W. Batson,* for appellant.

We will consider the first two assignments of error together, one being that the court erred in not giving a peremptory instruction in favor of the Wrought Iron Range Company and the other that the court erred in not giving a peremptory instruction in favor of Clark Young, which instructions were requested separately.

These peremptory instructions should have been given for the following reasons: first, the words, "no good" are not libelous *per se;* second, there is no publication of them; third, there is no malice shown and no damage proven.

This case falls squarely in the doctrine announced in the case of *Ely* v. *Railroad,* 83 Miss. 519, where the court held the following words: "cause for leaving service, unsatisfactory service; conduct good," not libelous *per se,* and that the one suing on same had the burden of proving

not only that the words were untrue but were published from malicious and false motives.

In the case here absolutely no malice was shown whatever, no damage whatever is shown; that Young, when he made the statement to Faulk, was actuated by the best of motives; that he merely inquired of Faulk whether he thought Boltz could pay half down on the stove; that he had a report on him "no good" and had orders not to deliver the stove except on payment of half down. The record shows that, at the time he told Mrs. Boltz half would have to be paid down, he was very much embarrassed and stood around not seeming to know how to approach the subject.

There was no publication. Faulk was the agent of Boltz, because Boltz had engaged him to help put the stove up, so when Young was talking to Faulk, inquiring about Boltz's financial condition, he was talking to Boltz's agent; hence there was no publication to him. Then, when he told Mrs. Boltz the reason why he could not put it up he was talking to a party who had signed the note for the purchase price, because Mrs. Boltz signed the note with Boltz, or Boltz signed for her, so there was no publication to her; he was merely giving Mrs. Boltz his reasons and instructions that he could not deliver the stove unless half was paid. No evidence whatever is in the record of any malice, and no damage whatever is shown. The only injury shown is that Boltz got mighty mad over it and proceeded to employ a lawyer at once.

We submit that these peremptory instructions should have been given.

The next error assigned is that the court erred in giving the following instructions for the plaintiff: "The court instructs the jury for the plaintiff that in this suit malice does not necessarily mean or imply personal ill will against a person, but merely the wilful doing of an unlawful act resulting in injury to another."

This is erroneous, because there is no evidence on which to base malice, and no evidence of any wilful or unlawful act being done from which the jury may infer malice; as

the conduct of Young on the occasion complained of was only a business inquiry to the agent of the plaintiff.

The next assignment of error is that the court erred in granting the following instruction for the plaintiff: "The court instructs the jury for the plaintiff that in an action for libel the law implies damage for the speaking of the libelous words, and also that the defendant intended the injury the libel is calculated to effect. And in this cause, if the jury believe from the evidence, and under the instructions of the court, that the defendant wantonly and maliciously, as charged in the declaration, published the words set out in the declaration, or substantially the same words, then they are to determine, from all the facts and circumstances proved, what damages ought to be given; and the jury are not confined to the mere pecuniary loss or injury sustained. Injury to reputation or character, if proved are proper elements of damages."

This instruction is erroneous in this: it tells the jury that, in an action for libel, the law implies damages from the speaking of the libelous words and also that the defendant intended the injury the libel is calculated to effect.

This part of the instruction would be correct if there were evidence in the record sufficient on which to base the law this part of the instruction is intended to set out; but words like these, not libelous *per se,* would have to be submitted to the jury to say whether they are libelous or not; and nowhere does this instruction submit to the jury whether or not said words are libelous.

The instruction then goes on to say: "and in this cause, if the jury believe from the evidence, and under the instructions of the court, that the defendant wantonly and maliciously, as charged in the declaration, published the words set out in the declaration, then they are to determine, from all the facts and circumstances proved, what damages ought to be given etc." This part of the instruction is erroneous because there is no evidence in the rec-

ord that the defendant wantonly and maliciously published the words complained of.

The giving of the following instruction for plaintiff is next assigned as error: "The court instructs the jury for the plaintiff, that it is not necessary in all cases to prove malice by extrinsic evidence. Malice may be inferred from the falsity of the words in question and may also be inferred from the surrounding circumstances or from the absence of probable cause for making the assertion in question."

There is no evidence whatever in the record from which the jury would be authorized to infer malice, either from the words in question or from the conduct of the defendant in uttering them; so this instruction is fatally erroneous, for the reason that there is no evidence on which to base it.

Clark Young cannot be held as agent of the Wrought Iron Range Company for the acts of its agent that wrote the said words on the order blank because it is not shown that he had anything whatever to do with the writing of said words; and, in order to get Clark Young for punitive damages, the jury would have to believe that his conduct, in the conversation with Faulk or Mrs. Boltz was marked with wantoness or maliciousness, and we submit that the record is wholly barren of any evidence showing wilful, wanton or malicious conduct on his part. He simply made a business inquiry about the ability of Boltz to pay for the stove which he had been instructed not to deliver unless half of the price was paid at that time. In his conversation with Mrs. Boltz on the same subject, the testimony of Faulk shows that Young was very much embarrassed about it. See Faulk's testimony. Clearly, therefore, Clark Young cannot be held for punitive damages.

Then, to get the Wrought Iron Range Company for punitive damages on account of conduct of Clark Young, the said conduct of Clark Young would have to be wilful, wanton and malicious, as the Wrought Iron Range Company would not be liable for the acts of its agent, in puni-

tive damages, unless such acts were wilful, wanton and malicious, and we submit that the record shows that his conduct was not wilful, wanton or malicious in any respect.

Now, as to Clark Young's conduct complained of, neither the Wrought Iron Range Company nor Clark Young is liable for punitive damages, and in no phase of the case could Clark Young be held liable for punitive damages for the act of whatever agent of the Wrought Iron Range Company that wrote the words on the order blank, because Clark Young had nothing to do with the writing of the words complained of; yet this instruction authorizes the jury to find punitive damages against both defendants if the writing and publishing of said words were wilfully or maliciously done, when it is shown that Clark Young had nothing in the world to do with the writing of the alleged libel.

We submit that the foregoing instruction is fatally erroneous. This is a case where a correct instruction for plaintiff could not be drawn, for the reason that a peremptory instruction should have been given in favor of each defendant, and the case should therefore be reversed and dismissed here.

It follows that the verdict was contrary to the law and evidence.

*W. B. Parker,* for appellee.

Appellant complains that the words "no good" used of and against the plaintiff in this suit were and are not libelous *per se,* and cited *Ely* v. *Railroad Co.,* 83 Mises. 519. An examination of this case will disclose the fact that this was a case where the plaintiff's employer handed him a clearance card with the words complained of thereon, and there was no publication in the first place, but a simple statement of the fact that his services were unsatisfactory is not akin to the words used in this suit, and, too, in this case the publication was made not only to the wife of the

plaintiff but to plaintiff's neighbors, after defendant had agreed to sell and deliver a stove and accepted plaintiff's note therefor. We submit that it would be a hard matter to find words which would more readily drive a man to wrath or more certainly deprive him of the benefit of public confidence and social intercourse.

Appellant contends that there was no publication when the writing was shown to Faulk a neighbor and to Mrs. Boltz; in this he is in error. 17 R. C. L., page 315.

The record discloses that the defendant company made the sale, agreed to deliver the stove, took plaintiff's note for the price, and without any provocation wrote across the face of the order or delivery sheet that plaintiff was "no good" and required that the stove be not delivered without a payment of half the price in cash; Mr. Boltz enjoyed unconditional local credit and no excuse whatever was shown in excuse of such action and we therefore assume that defendant's action and its conduct was reckless and without reasonable cause, justification or excuse and therefore wanton and wilful. The same will of course apply to the publication by Clark Young.

We submit that the case was properly tried and submitted to the jury and should be affirmed.

W. H. COOK, J., delivered the opinion of the court.

G. J. Boltz, appellee, sued the Wrought Iron Range Company and Clark Young, appellants, for damages for an alleged libel, and there was a verdict and judgment for plaintiff, from which this appeal is prosecuted.

The Wrought Iron Range Company was engaged in the business of selling stoves, and through its sales agent, Gibson, sold a stove to appellee. Appellee signed a written order or application for the stove, and for the purchase price of one hundred and seven dollars, he executed a note signed by himself and wife, payable twelve months after date. When the stove was ready for delivery the original order, with the words "no good" written thereon, was

placed in the hands of the defendant Clark Young, one of the agents of the stove company, and he was instructed to deliver the stove and collect fifty-seven dollars on the purchase price thereof, and in the event this cash payment was refused he was instructed not to deliver the stove.

The plaintiff was employed away from home at that time, and he arranged with a neighbor, J. A. Faulk, to assist in receiving, unloading, and placing the stove when it was delivered, and when the defendant Young carried the stove to plaintiff's residence he met Faulk and discussed with him the probability of being able to collect the cash payment, and showed him the order containing the notation "no good." He then proceeded to plaintiff's residence, and there explained his instructions to plaintiff's wife, and requested the payment of fifty-seven dollars on the purchase price of the stove. Mrs. Boltz explained her inability to make this payment, and demanded to know why this change had been made in the terms of the contract, and in explanation of his demand he showed the order to her. The cash payment was refused, and Young carried the stove away, and when plaintiff learned from Faulk of the occurrences of the day he proceeded at once to the office of his lawyer, and this suit followed.

It is earnestly insisted that the request of the defendants for a peremptory instruction should have been granted for the following reasons: First, the words "no good" are not libelous *per se;* second, there was no publication shown; and, third, there was no malice shown and no damage proven.

It is sometimes difficult to determine definitely when language which imputes insolvency or want of credit is actionable *per se,* and especially is this true when it is used of or concerning an individual. There is a well-recognized distinction, when the language refers to the profession, trade, business, or calling of a person, and when it is published of or concerning the person as an individual. In *Nichols* v. *Daily Reporter Co.,* 30 Utah, 74, 83 Pac. 573,

3 L. R. A. (N. S.) 339, 116 Am. St. Rep. 796, 8 Ann. Cas. 841, the rule is announced as follows:

"Words charging nonpayment of debts, insolvency, or which tend to impute want of credit or integrity, are actionable without alleging special damages when they refer to merchants, tradesmen, and others in occupations where credit is essential to the successful prosecution; but, generally, these same words are not *per se* actionable when they do not refer to persons in their office, profession, trade, business, or calling."

See, also, *Hanaw* v. *Jackson Patriot Co.,* 98 Mich. 506, 57 N. W. 734; *McDermott* v. *Union Credit Co.,* 76 Minn. 86, 78 N. W. 967; *Stannard* v. *Wilcox & Gibbs Sewing Mach. Co.,* 118 Md. 151, 84 Atl. 335, 42 L. R. A. (N. S.) 515, Ann. Cas. 1914B, 709; 17 R. C .L. 299, 300.

As to language which imputes dishonesty or want of credit in an individual, it is very generally recognized that it is impossible to lay down any definite rule which will govern in all cases, and that the language used and the particular facts and circumstances of each case must control. In *McDermott* v. *Union Credit Co.,* 76 Minn. 86, 78 N. W. 967, 79 N. W. 673, it is said:

"The courts have, for practical reasons and considerations of public policy, to draw the line somewhere, and this has often to be done by a gradual process of exclusion and inclusion, depending upon the particular facts of each case as it arises."

It may be stated generally that any written or printed language which tends to injure one's reputation, and thereby expose him to public hatred, contempt, or ridicule, degrade him in society, lessen him in public esteem, or lower him in the confidence of the community, is actionable *per se,* and language which imputes that one is wholly unfit and unworthy of credit necessarily and naturally tends to injure his standing and good name in the community, and lower him in the confidence and respect of his neighbors. When the words "no good" are used in such manner and connection as to denote that one is en-

gaged in making accounts which he does not intend to pay, and is dishonest and wholly unfit and unworthy of credit, this naturally and necessarily tends to injure his standing and good name in the community, and lower him in the confidence and respect of his neighbors, and when these words are so used as to injure one's credit and his reputation for integrity and honesty, we conclude that they are actionable *per se,* but whether the use of the language under the particular facts and circumstances in this case is libelous *per se,* it is unnecessary to decide in view of our opinion upon another phase of the case.

The declaration alleges a publication to J. A. Faulk and Mrs. Hattie D. Barr, neighbors of the plaintiff, and to plaintiff's wife. We recognize the well-established rule that ordinarily a communication to the wife of words defamatory of her husband is a publication in law. But in this case the words were used of and concerning credit based upon a contract to which the wife was a party. She had signed the note, and proposed to become jointly liable with her husband for the purchase price of the property, and the communication to her was in reference to credit to be extended to the husband and wife jointly, and under the particular facts here we do not think the communication to the wife concerning this joint liability and credit was a publication.

The order containing the offending language was also exhibited to J. A. Faulk, but the evidence shows that Faulk was the agent of the plaintiff for the purpose of receiving and placing the stove, and for that purpose he stood in the place of plaintiff, and the exhibition of this order to Faulk in explanation of the reason for the demand for a cash payment and the refusal to deliver the stove did not constitute a publication. The evidence totally fails to show any publication to Mrs. Barr, and under this state of proof the defendant's request for a peremptory instruction should have been granted, and the case is therefore reversed, and judgment entered here for appellants.

Reversed and judgment here for appellants.

*Reversed.*