JUDEVINE, Respondent, vs. BENZIES-MONTANYE FUEL & WAREHOUSE COMPANY and others, Appellants.

*September 16—October 13, 1936.*

514

516

John H. Rouse, Raymond J. Kasiska, and Robert H. Gollmar, all of Baraboo, for the appellants.

For the respondent there was a brief by Evenson & Shiels of Baraboo, and oral argument by W. G. Evenson.

FOWLER, J.  The case is before us upon appeal from an order overruling demurrers to the complaint on the ground that the facts stated do not constitute a cause of action and is presented in three aspects: (1) As one of libel.  (2) As one for damages for injury to plaintiff resulting from violation of a criminal statute by defendants.  (3) As one to recover damages for violation of plaintiff's right of privacy.

(1) (a) No special damages are alleged in the complaint, so that to constitute a cause of action for libel the matter published must be libelous per se.  17 R. C. L. p. 299; McDermott v. Union Credit Co. 76 Minn. 84, 78 N. W. 967, 79 N. W. 673; Holt v. Ashby, 150 Ky. 612, 150 S. W. 810. To render words libelous per se they must impute commission of a crime to the plaintiff or "tend to degrade or disgrace the plaintiff generally, or to subject him to public distrust, ridicule, or contempt in the community where, as alleged, he had theretofore been regarded with high confidence and esteem. . . . Being printed, they need neither allege any crime nor apply to any particular business situation wherein he might be specially subject to injury." Scofield v. Milwaukee Free Press Co. 126 Wis. 81, 85, 105 N. W. 227.  In determining the meaning of the words involved, the court passes upon "the mere capability of the libelous meaning . . . Whether such meaning was in fact conveyed to the readers is a jury question." Scofield Case, supra, p. 87; Dabold v. Chronicle Publishing Co. 107 Wis. 357, 362, 83 N. W. 639.

It is thus for the court to determine, in passing upon the sufficiency of the complaint, whether the words used by the defendants are capable of the meaning attributed to them by the complaint, which is, to use the words of the complaint, such as to "expose the plaintiff to public contempt, ridicule . . . [and] disgrace."

In determining this question we can consider only the words of the handbill. The letters were sent to the plaintiff himself, and there is no allegation of their being read by others. Thus as to them there was no publication, and whether or not they are libelous is beside the case. The purpose with which the letters were sent and the other acts done by the corporation and its officers that are alleged in the complaint are also immaterial on the question of the meaning which the handbills are capable of carrying, although they bear upon the question of express malice involved in a libel case as basis for exemplary damages, and the malice essential to make actionable the violation of the statute involved in (2).

Taking the handbill by itself, it announces that an account of the plaintiff for $4.32 is offered for sale to the highest bidder; that bids for its purchase will be received at the office of "Power's Service" in Chicago; that the account will be advertised for sale until sold; and that the Power's Service will give information, presumably as to its method of handling the sale of accounts, to merchants and professional men desiring to dispose of them. It indicates nothing as to what those methods are, or that the purpose of the method used by the Power's Service is to extort payment of accounts by threats of advertisement of their sale. It does not show that the account is of long standing. It is perhaps subject to the inference that the account would not be advertised for sale if the plaintiff could presently pay it, but it is hardly subject to the inference that he was able to pay it and wilfully and dishonestly refused to do so. The advertisement was at a

time of general business depression and unemployment, a fact of which the court has taken judicial notice (*Suring State Bank v. Giese,* 210 Wis. 489, 246 N. W. 556), and the mere fact of owing an unpaid bill during such a time cannot fairly and reasonably be considered as subjecting one to public contempt, ridicule, or disgrace. It has been held not libelous *per se* to publish that one owes an account long past due and has "cowardly slunk behind . . . the statute of limitations." *Hollenbeck v. Hall,* 103 Iowa, 214, 72 N. W. 518; *Stannard v. Wilcox & Gibbs Sewing Machine Co.* 118 Md. 151, 84 Atl. 335; or to list one in a rating book as slow in payment of bills; *McDermott v. Union Credit Co.* 76 Minn. 88, 79 N. W. 673 (on rehearing); *McDonald v. Lee,* 246 Pa. 253, 92 Atl. 135; or to insert in the want column of a newspaper, "Wanted, E. B. Zier to pay a drug bill," although to so insert the statement in connection with a similar advertisement relating to another person to which was added "and not to go deadheading his way" was held to be so.

Words not libelous *per se* have been held to have been capable of conveying a libelous meaning by the special circumstances under which they were used in the following cases: *Thompson v. Adelberg & Berman, Inc.,* 181 Ky. 487, 205 S. W. 558; *Woodling v. Knickerbocker,* 31 Minn. 268, 17 N. W. 387; *Traynor v. Seiloff,* 62 Minn. 420, 64 N. W. 915; *Wolfenden v. Giles,* 2 B. C. 279; *Gault v. Babbitt,* 1 Ill. App. 130; *Green v. Minnes,* 22 Ont. Rep. 177. In the last case, however, it was held that the plaintiff must prove that the amount owing on her account stated as for sale was not as stated in a list of accounts advertised, which really makes the case one in point for the defendant, as the amount here involved is by the complaint admittedly correct. In the instant case the only circumstance having any possible bearing upon the meaning to be drawn from the handbill is its general distribution in the city of plaintiff's residence and the mailing

of it to persons in the vicinity. We do not consider this as capable of justifying the inference that the plaintiff was brought into "public contempt, ridicule or disgrace" by this circulation.

(b) It is also stated in the complaint that the distribution of the handbill injured the credit of the plaintiff. Loss of credit in relation to his business as a contractor is not alleged, nor is injury to his business as such. It is stated in *Kay v. Jansen,* 87 Wis. 118, 58 N. W. 245, that it is doubtful whether words imputing that one's credit is bad are actionable unless relating to a merchant or tradesman. Words imputing nonpayment of debts, want of credit, or insolvency to merchants, traders, and others in business where credit is essential to successful operation are libelous *per se.* See note to 116 Am. St. Rep. 817, and cases cited. But to make them so, it has been held that it is essential that such imputation relate to or affect the plaintiff in his business. *Morasse v. Brochu,* 151 Mass. 567, 25 N. E. 74, 8 L. R. A. 524; *Nichols v. Daily Reporter Co.* 30 Utah, 74, 83 Pac. 573, 3 L. R. A. (N. S.) 339; *Witham v. Atlanta Journal,* 124 Ga. 688, 53 S. E. 105, 4 L. R. A. (N. S.) 977; *Dallavo v. Snider,* 143 Mich. 542, 107 N. W. 271, 4 L. R. A. (N. S.) 973. The contrary has also been held. *Davis v. Ruff,* Cheves (S. C.) 17, 34 Am. Dec. 584; *Phillips v. Hoefer,* 1 Pa. 62, 44 Am. Dec. 111. In the case last cited the plaintiff was a farmer, and the ruling is in fact based on the proposition that credit was necessary to support of his "business." We are of opinion that the rule next above first stated is the better one, and that were the words of the handbill construed as imputing that the plaintiff was unworthy of credit, to render them actionable it should appear that they related to the plaintiff's business credit or that they resulted in denial of credit to him for merchandise for his personal or family use or other special damage. Neither appears by the instant complaint. No

denial of credit is alleged. It does not appear that the handbills came into the hands of any dealers in building materials, who are the only persons with whom the plaintiff would have dealings in the conduct of his business as a contractor. From mere distribution to other persons it cannot be presumed that plaintiff's business credit was affected.

(c) The plaintiff relies especially upon the decision of this court in *Muetze v. Tuteur,* 77 Wis. 236, 46 N. W. 123, as ruling the case as one in libel in his favor. For two reasons it does not necessarily do so. In that case a return card on letters sent through the mails showing that the sender was in the business of "collecting bad debts" was held libelous *per se*. The phrase quoted was in very large type and the envelope was of red paper. The plaintiff's name had been inserted in a book sent out to members of an association of merchants to which defendant belonged listing persons therein who were considered by the association as unworthy of credit. This book was shown to the plaintiff by a retailer who had theretofore given credit to the plaintiff and who denied him credit because of the insertion of his name in the book. In view of these facts, the sending of the envelope, the insertion of the plaintiff's name in the book, the use made of the book, and the result of its use, the court stated in its opinion, page 242: "The communications of this association [of merchants] are not only libelous and not privileged, but they would seem to constitute the offense of 'threatening communications,' as defined in sec. 4380 R. S." The statement as to "threatening communications" will be considered herein under (2). To bring the instant case within the rule of the *Muetze Case,* the handbill should have advertised a list of accounts expressly designated as "bad," and the complaint should have alleged special damage by denial of credit, as the plaintiff in the *Muetze Case* was not in business at the time he was refused credit.

Another case strongly relied on to support the complaint as stating a case in libel is *Tuyes v. Chambers*, 144 La. 723, 81 So. 265. There are statements in the opinion to such effect. However, that case is plainly supported on the ground that the acts involved violated a statute of the state of Louisiana, and the statements respecting libel may be considered as beside the real issue. It is to be noted also that the truth of the statements as to the indebtedness was considered as a defense to the action as one in libel.

For the reasons above stated, we hold that the plaintiff's cause of action, if any he has, cannot be considered as one within the law of libel.

(d) The defendants also contend that the complaint is demurrable because the falsity of the matters contained in the handbill is not alleged. The complaint is based, not upon the literal meaning of the words of the handbill, which are not alleged to be false, but on the imputation of subjection to contempt, disgrace, and ridicule, and injury to credit in the community resulting from the circulation of the handbill. The complaint alleges that the circulation of the handbill produced such result, and that the plaintiff had previously been favorably known, and had borne a good reputation for honesty, payment of bills, and integrity in his community. We consider that this implies and is a sufficient allegation of the falsity of the imputations claimed to be carried by the handbill.

(2) The plaintiff claims that if the complaint does not state a cause of action for libel it does state one to recover damages for injury to the plaintiff through violation by the defendants of sec. 340.45, Stats., which reads as follows:

"Any person who shall, either verbally or by any written or printed communication, maliciously threaten to accuse another of any crime or offense, or to do any injury to the person, property, business, profession, calling or trade, or the profits and income of any business, profession, calling or trade of another, with intent thereby to extort money or any

pecuniary advantage whatever, or with intent to compel the person so threatened to do any act against his will or omit to do any lawful act, shall be punished by imprisonment in the state prison not more than two years nor less than one year or by fine not exceeding five hundred dollars nor less than one hundred dollars."

The complaint alleges intent on the part of the defendants to extort money. But reference to the statute discloses that the injury covered is to "the person, property, business, profession, calling or trade." Injury to reputation is not within the statute. Injury to credit would be if it were in connection with one's business, but injury to the plaintiff's business as a contractor or his trade as a carpenter is not alleged. The complaint therefore does not show violation of the statute cited. The defendants contend that the *Muetze Case, supra,* by the statement above quoted from page 242 of the opinion, rules the instant case upon this proposition, for sec. 4380, R. S. 1878, there referred to is the same as the present sec. 340.45, Stats. It is to be noted, however, that the language of the opinion is it "would *seem*" that the acts stated "constituted the offense" covered by the statute. This does not, in its terms, directly hold that such offense was stated. It no doubt expressed the impression of the court that the statute was violated. But we consider that such impression resulted from a too hasty consideration of the language of the statute, and a failure to note either that the word "reputation" is not included in the statute or that the facts involved did not cover injury to any business or trade of the plaintiff or loss of any profits arising from business or the plaintiff's trade. The *Muetze Case* is overruled so far as it implies that the facts of the defendants' therein involved constituted a violation of the statute cited, in view of the fact that the plaintiff in that case was not conducting any business, and the evidence does not show that he was injured in any way pertaining to the carrying on of his trade as a jeweler.

There is a statute, however, that the acts stated in the complaint did violate, if the defendants conspired to commit the acts for the purposes alleged. The statute reads as follows:

"Sec. 343.681 *Injury to business; restraint of will.* Any two or more persons who shall combine, associate, agree, mutually undertake or concert together for the purpose of wilfully or maliciously injuring another in his reputation, trade, business or profession by any means whatever, or for the purpose of maliciously compelling another to do or perform any act against his will, or preventing or hindering another from doing or performing any lawful act shall be punished by imprisonment in the county jail not more than one year or by fine not exceeding five hundred dollars."

For two or more persons to conspire to do an act to the injury of another which one person acting alone might lawfully do constitutes in this state a legal wrong. *State ex rel. Durner v. Huegin,* 110 Wis. 189, 85 N. W. 1046; *Martens v. Reilly,* 109 Wis. 464, 472, 84 N. W. 840; *Randall v. Lonstorf,* 126 Wis. 147, 105 N. W. 663. The statute above cited has been applied in actions to recover damages for its violation in *Boyce v. Independent Cleaners, Inc.,* 206 Wis. 521, 240 N. W. 132; *Schultz v. Frankfort M., A. & P. G. Ins. Co.* 151 Wis. 537, 139 N. W. 386; and *Randall v. Lonstorf, supra.*

As the statute makes criminal the threatening of a person for the purposes stated, it confers on such person protection from the acts forbidden. "The wrongful invasion of a clear right is of itself sufficient to support an action, and the law presumes [some] damages, though they may be only nominal." *Koerber v. Patek,* 123 Wis. 453, 460, 102 N. W. 40. But the opening words of the statute make a conspiracy essential to its violation. Existence of a conspiracy is therefore essential to create civil liability for violation of the statute. As there is no allegation that the defendants conspired to do the acts for the purposes stated, the complaint fails to state a

case for such violation. While conspiracy need not be alleged in a complaint to impose liability for a tort on all who have conspired to commit it, and evidence of conspiracy may be shown without alleging it, the case is different when the act involved is one for which no liability exists if done by one person alone. Where conspiracy forms the basis of the liability, as it does here, under the statute, it would seem that it must be alleged. This is the kind of action referred to in *State ex rel. Durner v. Huegin, supra,* and in *Green v. Davies,* 182 N. Y. 499, 505, 75 N. E. 536. It is stated, in 12 C. J. p. 585, § 105, and again at page 630, that it is essential to allege and prove a conspiracy "where the act which is alleged as the basis of liability is one which if committed by an individual would impose no liability." This, as above stated, seems a correct statement, but we do not find cases cited to the precise point of the necessity of the allegation. Upon general principle, we hold that the allegation is necessary in such cases.

(3) There are cases holding that unwarranted invasion by printed matter of the right of privacy is actionable; that the truth of the matters constituting such invasion is no defense; and that advertising a debt for sale for the purpose of coercing payment constitutes such an invasion. *Brents v. Morgan,* 221 Ky. 765, 299 S. W. 967, 55 A. L. R. 964, so holds unqualifiedly. It is stated in 21 R. C. L. p. 1198, § 4: "Violation of the right of privacy consists in the interference with another's seclusion by subjecting him to unwarranted and undesired publicity." At page 1200 of the same volume it is stated that "the violation of the right of privacy is a tort and the injured person is entitled to recover damages." A note in 55 A. L. R. 971, in connection with *Brents v. Morgan, supra,* states: "It has been quite generally held, however, that a method used in attempting to obtain payment of a debt, which tends to impute dishonesty to the debtor, or to throw

him into disgrace and ridicule, *or to invade his right of privacy,* gives a right of action for damages." Statements in Cooley on Torts, in an addition to the original text by the editor of the third edition at page 360, and those in an article in 12 Boston University Law Review, 353, support the right of action.

In an article in 9 St. John's Law Review, 159, it is stated that "the following cases have rejected the legal right of privacy altogether : *Vassar College v. Loose-Wiles Biscuit Co.* (D. C.) 197 Fed. 982 ; *Atkinson v. Doherty & Co.* 121 Mich. 372, 80 N. W. 285 ; *Roberson v. Rochester Folding-Box Co.* 171 N. Y. 538, 64 N. E. 442 ; *Baumann v. Baumann,* 250 N. Y. 382, 165 N. E. 819 ; *Somberg v. Somberg,* 263 N. Y. 1, 188 N. E. 137 ; *Henry v. Cherry & Webb,* 30 R. I. 13, 73 Atl. 97 ; *Hillman v. Star Pub. Co.* 64 Wash. 691, 117 Pac. 594. See *Von Thodorovich v. Franz Josef Ben. Asso.* (C. C.) 154 Fed. 911." A cursory examination of these cases indicates that the statement is correct, except as to the *Baumann* and *Somberg Cases.* The question has frequently arisen in cases involving the publication of photographic likenesses of persons. In these cases the rulings are contradictory. The broadest recognition of the right in this connection is given in *Pavesich v. New England Life Ins. Co.* 122 Ga. 190, 50 S. E. 68, 69 L. R. A. 101. A contradictory ruling was made in *Roberson v. Rochester Folding-Box Co., supra.* In the opinion in the latter case it is stated at page 556 ; "The so-called 'right of privacy' has not as yet found an abiding place in our jurisprudence, and, as we view it, the doctrine cannot now be incorporated without doing violence to settled principles of law by which the profession and the public have long been guided." It is pointed out in the latter case that the right did not exist at common law, and that it was first adopted following an article published in 1890 in 4 Harvard Law Review, page 193, in the preparation of which Louis D.

Brandeis collaborated, which traces the gradual extension by the courts of rights of action for various species of personal torts, and takes the position that in view of prevalent abuses of the individual's right to be let alone the courts should hold actionable invasion of that right on the principles on which was based their previous allowance of a remedy to cover infringement of other personal rights as occasion required. To go into the subject more extensively would take more time than we have to devote to it. The articles, texts, cases, and notes above cited sufficiently point the way of research to those whose curiosity or reasoning this opinion fails to satisfy. Statutes of several states have created a cause of action for invasions of the right of privacy in some situations. See secs. 50, 51, of the New York Civil Rights Law. We are of opinion, especially in view of the fact that truth is held no defense to the action where it has been recognized as it is to actions for injury to reputation through libel and slander, that if a right of action for violation of the right of privacy by such acts as are here involved is to be created, it is more fitting that it be created by the legislature by declaring unlawful such acts as it deems an unwarranted infringement of that right. Especially is this true of actions of the kind here involved, for which our statutes quoted under (2) above seem to afford a remedy in all ordinary cases of coercive practices in the collection of debts not covered by the established law of libel.

*By the Court.*—The order of the circuit court is reversed, with directions to enter an order sustaining the demurrers.