P. AYMAR, and ELIZA ANN, an infant, by the said PETER,
            her next friend, *against* W. L. ROFF.

Where a man was married to an infant under 12 years of age, who immediate- *October* 10.
  ly declared her ignorance of the nature and consequences of the marriage,
  and her dissent to it; the court, on a bill filed by her next friend, *ordered*
  her to be placed under its protection, as a *ward* of the court, and forbade all
  intercourse or correspondence with her by the defendant, under pain of
  contempt.

THE bill stated that the plaintiff, *Eliza A.* the infant, was
the daughter of *Peter A.* and under 12 years of age. That
in *August* last, the infant, with her mother, went from the
city of *New-York* to *Staten Island,* and boarded with Mrs.
*Roff.* That the infant there became acquainted with the de-
fendant son of Mrs. *Roff,* who was about 23 or 24 years of
age. That on the 27th of *September* last, the defendant pro-
posed to the infant to go to a minister and be married.
That the infant then being under 12 years of age, and ig-
norant of the duties which the marriage, if legal, would
impose, and considering the matter as a frolick, agreed,
and went with the defendant to the house of *Robert F.
Randolph,* a baptist minister, residing on *Staten Island,* by
whom the ceremony of marriage was on that day performed.
That the infant immediately returned to her mother, and

the plaintiff, *P. A.*, took her and her mother back to *New-York*. That the said infant was then under 12 years of age, being born on the 30th of *September*, 1805. That as soon as she was informed of the duties of the marriage state and what it was in her power to do, she did, on the said 30th of *September*, in the presence of *Thomas Bolton*, a master in chancery, and of several other persons, declare her dissent from the marriage, and her unwillingness to be bound by it, and her election to live under the protection of the plaintiff; and this declaration was reduced to writing, and signed by the infant, and attested by the master and others. That when the infant made the declaration, neither of her parents was present, nor any of her relations: but she made the same voluntarily; and she now repeated the declaration, and declared her dissent from the said pretended marriage, and disavowed the same. That no meeting, or intercourse of any kind, had taken place between the infant and the defendant, since the said marriage.

Prayer for a *subpœna*, and that the infant may be placed under the protection of the court, as its ward, and that the defendant be restrained, by the order or process of the court, from holding any conversation, or having any intercourse or correspondence with the said infant, and for further relief, &c.

The bill was sworn to by the plaintiff, *Peter*, and subscribed by the infant, in the presence of the master.

*D. S. Jones*, for the plaintiff.

The following order was made by the court:

"On reading the bill, and on motion of Mr. *D. S. Jones*, of counsel for the plaintiffs, and the said infant being examined in court, and repeating the same declaration: *Ordered*, that the said *Eliza Ann Aymar* be placed under the protection of this court, as a ward thereof, and that the defendant refrain from holding any conversa-

tion, or from having any intercourse or correspondence with the said *Eliza*, so long as this order remains in force, under the pain of incurring a contempt."

N. B. No further order was asked for in this case, so that nothing further was done, in the first instance. It appears, however, from the cases referred to in *Eyre* v. *Countess of Shaftsbury*, (2 *P. Wms.* 111, 112.) that the parson and all other agents concerned in the marriage of infants, without the consent of their guardians have been committed.