BERENICE L. BAUMANN, Respondent, v. CHARLES L. BAUMANN et al., Appellants.

(Argued February 13, 1929; decided March 19, 1929.)

*Edgar J. Nathan* for appellants. The injunctive relief is improper. (*Piper* v. *Spence,* [1925] 1 Dom. L. Rep. 334; *International Register Co.* v. *Recording Fare Co.,* 151 Fed. Rep. 199; *City of Chicago* v. *P. G. L. & C. Co.,* 170 Ill. App. 98; *Mullen* v. *Jennings,* 9 N. J. Eq. 192; *Dunn* v. *Bryan,* Ir. R. 7 Eq. 143; *Matter of Sawyer,* 124 U. S. 200; *Roberson* v. *Rochester Folding Box Co.,* 171 N. Y. 538; *Matter of Debs,* 158 U. S. 564; *Marlin Fire Arms Co.* v. *Shields,* 171 N. Y. 384; *Brandreth* v. *Lance,* 8 Paige, 24; *De Wick* v. *Dobson,* 18 App. Div. 399; *N. Y. Juvenile Guardian Soc.* v. *Roosevelt,* 7 Daly, 188; *Francis* v. *Flinn,* 118 U. S. 385.) It was error to take jurisdiction of this action for a declaratory judgment. (*Matter of State Industrial Comm.,* 224 N. Y. 13; *Muskrat* v. *United States,* 219 U. S. 346; *Anway* v. *Grand Rapids,* 211 Mich. 592; *Bareham* v. *City of Rochester,* 246 N. Y. 140; *American Historical Soc.* v. *Glenn,* 248 N. Y. 445.)

*Herbert R. Limburg* and *Joseph L. Weiner* for respondent. The injunction to prevent the continuance of defendants' fraudulent and illegal conduct was not only proper but essential for the protection of plaintiff's rights. It was within the power of the court to grant such relief. Its action in so doing is sustained both on principle and by authority. (*Chapman* v. *Phenix National Bank*, 85 N. Y. 437; *Carroll* v. *State*, 53 Neb. 431; *Brown Chemical Co.* v. *Meyer*, 139 U. S. 540; *Edison* v. *Edison Polyform Co.*, 73 N. J. Eq. 136; *State ex rel. La Follette* v. *Hinkle*, 131 Wash. 86; *Schwartz* v. *Edrington*, 133 La. 235; *U. S.* v. *McKay*, 2 Fed. Rep. [2d] 257; *Oppenheim* v. *Kridel*, 236 N. Y. 156; *Bennett* v. *Bennett*, 116 N. Y. 584; *Colwell* v. *Tinker*, 169 N. Y. 531; 193 U. S. 473; *Wilner* v. *Bless*, 243 N. Y. 544; *Higgins Co.* v. *Higgins Soap Co.*, 144 N. Y. 462; *World's Disp. Med. Assn.* v. *Pierce*, 203 N. Y. 419; *Greenberg* v. *Greenberg*, 218 App. Div. 104; *Hall* v. *Smith*, 80 Misc. Rep. 85; *Randazzo* v. *Roppolo*, 105 N. Y. Supp. 481.) The court properly declared and adjudged that the Mexican divorce was void; that the Connecticut marriage was void; that the defendants are not husband and wife; and that plaintiff and defendant Baumann are husband and wife. (*Board of Education* v. *Van Zandt*, 234 N. Y. 644; *Westchester Mortgage Co.* v. *G. R. & I. R. R. Co.*, 246 N. Y. 194; *Rooke* v. *Lord Kensington*, 2 K. & J. 753; *Lady Langdale* v. *Briggs*, 8 De G., M. & G. 391; *Guaranty Trust Co.* v. *Hannay*, 2 K. B. 536.)

HUBBS, J. The plaintiff has secured a declaratory judgment which adjudges that she is the lawful wife of the defendant Charles Ludwig Baumann; that the defendants are not and never have been husband and wife; that an alleged divorce procured by the defendant Charles Ludwig Baumann from the plaintiff in Yucatan, Mexico, is null and void and that an alleged marriage between the defendants on June 28th, 1926, is null and void. The findings and evidence justify the judgment to that extent.

On a prior appeal in this case the Appellate Division

decided that this was a proper case for a declaratory judgment to judicially establish the matrimonial status of the plaintiff. (222 App. Div. 460.) We think the conclusion reached by the Appellate Division was justified by the facts in this case. The judgment entered, however, goes far beyond establishing the plaintiff's matrimonial status. It enjoins the defendants from representing or holding out that they are husband and wife, and from representing or holding out that the defendant Charles Ludwig Baumann was divorced from the plaintiff. It also restrains the defendant Ray Starr Einstein from assuming or using the name "Baumann." It also restrains the defendants from going through any marriage ceremony or "attempting or purporting to have performed any further marriage ceremony between them" during the life of the plaintiff. In granting such injunctive relief, on the facts in this case, we think the court exceeded its jurisdiction.

The plaintiff and Charles Ludwig Baumann were married in this State in 1909. They then were and ever since have been domiciled in this State. Two children were born of the marriage who have always resided with the plaintiff. In 1921 the plaintiff and the defendant Charles Ludwig Baumann entered into an agreement of separation under which the plaintiff released her dower rights, and the said defendant agreed to pay and has paid to the plaintiff $21,000 per annum. In 1924 the defendant Charles Ludwig Baumann went to the State of Yucatan, Mexico, and procured a document from the Director General of the Civic Register of the State of Yucatan, which purported to grant him a divorce from the plaintiff, which divorce the declaratory judgment has adjudged to be void. On June 28th, 1926, the defendants went through a marriage ceremony in the State of Connecticut, before a justice of the peace. The judgment herein declares said marriage to be null and void. Immediately after said ceremony the defendants returned to

New York city, where they have since lived as husband and wife, held themselves out as husband and wife, represented to the public that the defendant Ray Starr Einstein was Mrs. Charles Ludwig Baumann, the wife of Charles Ludwig Baumann, and also represented to the public that Charles Ludwig Baumann was no longer the husband of the plaintiff, and that he had secured a divorce from her in Yucatan.

The declaratory judgment herein has established the matrimonial status of the plaintiff. Injunctive relief is not necessary to establish that status. It is elementary that a court of equity will not award the extraordinary relief of injunction except in cases where some legal wrong has been done or is threatened, and where there exists in the moving party some substantial legal right to be protected. Whether there exists or is threatened a legal wrong to be restrained and a legal right to be protected is, in the absence of disputed questions of fact, a question of law.

Does the fact that the defendants are living as man and wife and holding themselves out as husband and wife, under the name of " Baumann " constitute a legal wrong which infringes a substantial legal right of the plaintiff, under the facts in this case? If so, the court had jurisdiction in its discretion to grant the injunction.

The acts of the defendants cannot affect the matrimonial status of the plaintiff. That is established by the provisions of the declaratory judgment which also adjudges the Yucatan divorce and the attempted marriage of the defendants null and void. If the plaintiff has any property rights, that decree also protects those rights by legally establishing her status.

It cannot be questioned that the conduct of the defendants is reprehensible. That it is illegal has been determined by the judgment herein. That it is socially and morally wrong may be conceded, and doubtless it is annoying and humiliating to the plaintiff. Those con-

siderations alone do not, however, justify the granting of an injunction. Equity cannot by injunction restrain conduct which merely injures a person's feelings and causes mental anguish. (*Mitchell* v. *Rochester Railway Co.*, 151 N. Y. 107; *Marlin Fire Arms Co.* v. *Shields*, 171 N. Y. 384, 389; *Roberson* v. *Rochester Folding Box Co.*, 171 N. Y. 538; *Atkinson* v. *Doherty & Co.*, 121 Mich. 372; *Vassar College* v. *Loose-Wiles Biscuit Co.*, 197 Fed. Rep. 982.)

The law does not remedy all social evils or moral wrongs. In the case of *Atkinson* v. *Doherty & Co.* (*supra*) the court said: " Although injuries to feelings are recognized as a ground for increasing damages, the law has never given a right of action for an injury to feelings merely. Slander and libel are based upon an injury to reputation, not the feelings; and although many offensive things may be said that injure feelings and shock and violate the moral sense, even though they be untruthful, they are not necessarily actionable. To make them so, they must be of such an atrocious character that the law will presume an injury to reputation, or special damage to property interests must be alleged and proved. What becomes of the innumerable cases of ill-natured and perhaps insulting and immoral things that may be said about persons? The answer is that in an enlightened effort to preserve the liberties of men, upon the one hand, and to prevent invasion of their liberties, upon the other, it has been found that a line of demarkation must be drawn, which affords a practical balance and satisfactory test of liability."

The most serious contention of the plaintiff is in relation to that part of the judgment which restrains the defendant Ray Starr Einstein from using the name " Baumann." Upon marriage a woman takes her husband's name. (*Chapman* v. *Phœnix National Bank*, 85 N. Y. 437, 449.)

The plaintiff has a legal right to use the name " Baumann," but not necessarily an exclusive right to the use

of that name. There is no pretense that said defendant is impersonating the plaintiff. She does not pretend to be Berenice L. Baumann, the plaintiff. There is no claim that the plaintiff will be injured because of a mistake in identity. It is urged, however, that the representation to the public that said defendant is the wife of Charles Ludwig Baumann, plaintiff's husband, constitutes a breach of plaintiff's marriage contract, deprives plaintiff of the exclusive right to be the only person having the legal right to be known as Mrs. Charles Ludwig Baumann and, therefore, constitutes a legal wrong which infringes upon plaintiff's legal right to her irreparable injury.

In the last analysis the only injury alleged is an injury to plaintiff's feelings. For such an injury an injunction will not be granted. In *Vassar College* v. *Loose-Wiles Biscuit Co.* (*supra*) the court quotes from *Marlin Fire Arms Co.* v. *Shields* (*supra*) as follows: " Equity does not undertake to relieve from all the annoyances caused by those who are inconsiderate of the feelings and business interests of others. On the contrary, it is a general rule, which has some exceptions, that it will not undertake to interfere where a party has an adequate remedy at law and when it does interfere it is guided by principles of equity, which during the long course of its administration have become established."

The court then says: " Any departure from these sound principles is likely to lead to evils far greater than those sought to be remedied." In *Mirizio* v. *Mirizio* (242 N. Y. 74, 84) Chief Judge Hiscock said: " The danger always is that a court may be led by what seem in some particular case to be equitable considerations into adopting some principle which when carried to subsequent and logical application to other facts leads to results which are unfortunate and unjust."

The plaintiff is living apart from her husband under a separation agreement which secures to her $21,000 a year.

She is conducting an independent business under the name of Berenice L. Baumann. She has secured a judgment which defines her matrimonial status, and protects her property rights, if any. The complaint does not allege that any of plaintiff's property rights are affected or endangered by the conduct of the defendants. Neither does it allege that the defendant Ray Starr Einstein has alienated the affections of plaintiff's husband or that plaintiff has been excluded by any act or conduct of said defendant from the marital society of her husband. Under such circumstances the acts enjoined do not constitute legal wrongs, which invade substantial legal rights of the plaintiff that can be recognized in law and protected by injunction. It is not the province of courts of equity to administer paternal relief in domestic affairs. As a matter of practical fact, such decrees cannot be enforced. That fact has been long recognized. (*Hodecker* v. *Strickler*, 39 N. Y. Supp. 515; 20 App. Div. 245; 1 Pomeroy's Equity Jurisprudence [4th ed.], sec. 99; *Cowley* v. *Cowley*, App. Cases [1901], 450.)

In jurisdictions where it has been attempted, it has lead to the granting of decrees that do not favorably impress this court but which illustrate the length to which the principle may be carried. In *Witte* v. *Bauderer* (255 S. W. [Texas] 1016) the court enjoined the defendant from having anything to do with plaintiff's wife " except that defendant be permitted to associate and consult with plaintiff's wife in such manner that she can discharge her duties as bookkeeper for defendant."

Attempts to govern the morals of people by injunctions can only result in making ridiculous the courts which grant such decrees.

We do not find it necessary to discuss the question of the jurisdiction of equity to grant injunctive relief in cases where there are no property rights involved. It is sufficient for the decision in this case that there exists no legal wrong which gives rise to a correlative legal right.

The judgment of the Appellate Division and that of the Special Term should be modified by striking therefrom the restraining clauses thereof and as modified affirmed, without costs.

CRANE, J. (dissenting in part). We must not recoil from an equity judgment because the law which it enforces is also good morals. The courts in this case have not restrained Charles Ludwig Baumann from living with a woman other than his wife; neither have they restrained the woman from maintaining such relationships with him. Under the law, this is a matter for their own consciences, except as it is made a criminal offense by the Penal Law, sections 100–103. Equity will not enjoin the commission of a crime.

I do not agree with the suggestion made in the opinions that the woman with whom Baumann is living has not attempted to impersonate the plaintiff. I think she has.

We are all agreed that Baumann has but one wife, and that is the plaintiff. Her married name is Mrs. Charles Ludwig Baumann — there is no other such person living. She is known throughout New York in the circle in which she lives by this name. It is more than a name — it is a position, a status, a condition, a relationship, a capacity. A name may mean very little, but the status and relationship which it indicates may mean a great deal, not only to the parties, but to the world. It means so much that a very large number of our citizens are opposed to the severance of the marriage tie for any reason.

What has the defendant Ray Starr Einstein done? She has usurped the status, the relationship before the public, which belongs to the plaintiff. She is impersonating the plaintiff to this extent. She represents and holds herself out to the public as Mrs. Charles Ludwig Baumann, the wife of the gentleman of that name. She is not Mrs. Charles Ludwig Baumann; she is not his wife, and in so far as she uses this name and poses as his wife, she

impersonates the plaintiff; she assumes the position and the relationship which the law has given to the plaintiff.

It is said that the courts may declare the plaintiff to be the wife of Charles Ludwig Baumann, but have no power to prevent another person masquerading in the same locality in this position and relationship. I, for one, cannot understand the reason for such a limitation. Why should a court of equity be impotent in the face of what all parties to this litigation concede to be wrong? I heartily agree that courts of equity should not seek to make people better by injunction, but I do consider it as much their business to protect a wife and mother in her status before the public, as in her property. Courts of equity from time out of mind have made persons return property fraudulently obtained; why should not a court of equity make this lady defendant give up a pretended relationship and a name which she is falsely and fraudulently using?

The defendant's name is Ray Starr Einstein. Why does she want to use the name Mrs. Charles Ludwig Baumann, wife of Charles Ludwig Baumann, when it carries with it a reflection upon the moral character of the plaintiff, the mother of children? Is a court of equity going too far under such circumstances when it says to Ray Starr Einstein: "Your own name is good enough, and you had better stick to it?" This is what courts are for.

I am for the affirmance of the judgment below in so far as it restrains Charles Ludwig Baumann and Ray Starr Einstein from representing or continuing to represent that Charles Ludwig Baumann was divorced from the plaintiff, and that Ray Starr Einstein is Mrs. Charles Ludwig Baumann, his wife.

As to the declaratory part of the judgment, I agree with the other members of the court.

O'BRIEN, J. (dissenting in part). After twelve years of marriage, the defendant Charles Ludwig Baumann

and the plaintiff Berenice, his wife, both domiciled in New York, executed a separation agreement. He made provision for the support of his wife and children and she released her dower rights. Three years later he departed for Mexico, spent a month in that country and returned with a document issued by an administrative official of the State of Yucatan and purporting to grant him a divorce. No action had been instituted by him in any court nor had any process been served upon or notice given to plaintiff. Not until the fact had been accomplished did she have any knowledge of her husband's journey or its purpose. Two years elapsed and then the husband, accompanied by the defendant Ray Starr Einstein, also domiciled in New York, drove to Connecticut and went through the form of a marriage before a justice of the peace. Mr. Baumann and Mrs. Einstein have since resided together in New York as husband and wife, he informing his acquaintances that he had obtained a divorce from his first wife and Mrs. Einstein assuming the title and claiming the position of Mrs. Charles Ludwig Baumann. The pretended Mexican divorce is a nullity (*Atherton* v. *Atherton*, 181 U. S. 155; *Haddock* v. *Haddock*, 201 U. S. 562; *Olmsted* v. *Olmsted*, 216 U. S. 386) and, consequently, so is the pretended Connecticut marriage. No one disputes either proposition. This appeal results merely from a challenge concerning the form of this remedy and the power of a court of equity to mould this decree. Among other things, the judgment enjoins both defendants from continuing to represent that Baumann has been divorced from plaintiff and it also enjoins Mrs. Einstein from assuming or using the name " Baumann " in any form or combination. The majority of this court holds that in respect to granting an injunction the Supreme Court exceeded its jurisdiction.

Something unsound appears to lie in a rule which would deny to a court of equity the power to enjoin the masquerade of another's name and title and the infringement

of the mingled personal and property rights which include that name and constitute the matrimonial status. This part of the judgment which grants an injunction can be reversed only because this court is prepared to concede a complete absence of power to protect that status in a manner substantially similar to the method adopted by the courts below. A mere declaration of rights will prove inadequate; I think that equity has jurisdiction to enforce some protective measure. An individual possesses an exclusive property right in a name. (*Edison* v. *Edison Polyform & Mfg. Co.*, 73 N. J. Eq. 136, 141, 143; *State ex rel. La Follette* v. *Hinkle*, 131 Wash. 86, 93.) By the custom of centuries a married woman takes her husband's Christian and surname. (*Chapman* v. *Phœnix Nat. Bank*, 85 N. Y. 437, 450; *Carrall* v. *State*, 53 Neb. 431, 436.) The common-law right to assume a name cannot extend beyond the boundary of good faith (*Smith* v. *U. S. Casualty Co.*, 197 N. Y. 420; *U. S.* v. *McKay*, 2 Fed. Rep. [2d] 257, 259), but the issue here lies even deeper. Plaintiff's right to the use of her name arises from her contract with Baumann which created their marriage relation and I think her right to her own name is exclusive. Her matrimonial status results from a merger of personal and property interests. Her property rights grow out of her personal relation. Marriage is deemed a valuable consideration and has always been subject to the special protection of the law. So we are not put to a choice on the one hand between the rule or the supposed rule that equity jurisdiction is limited to the protection of property rights (*Matter of Sawyer*, 124 U. S. 200, 210; *Matter of Debs*, 158 U. S. 564; *Roberson* v. *Rochester Folding Box Co.*, 171 N. Y. 538, 553) and on the other hand the theory that the vindication of purely personal rights also lies within its scope. (*Vanderbilt* v. *Mitchell*, 72 N. J. Eq.' 910; Pound, 29 Harvard L. R. 640; Long, 33 Yale Law Journal, 115; Chafee, 34 Harvard L. R. 407.) We deal with a union of such rights. The real Mrs. Baumann retains all the personal and

property interests in her marriage except those of consortium and dower, which she released by the separation agreement, and her former right of support, for which she substituted a different provision by the same contract. Mrs. Einstein's usurpation of this matrimonial title and status is not wholly dissimilar from the wrongful assumption of the title of a civil or military office. It is true that Ray Starr Einstein does not pretend to be Berenice Baumann, but she does purloin the title of Charles Ludwig Baumann's wife, a title to which she has no more right than to the one belonging to the Governor of Connecticut or to the commanding general of the Mexican army. Plaintiff has the legal right and defendants inflict the legal wrong. The name indicates the status of the wearer and Mrs. Einstein has no right to wear it. That right belongs to plaintiff. Pecuniary injury to her by confusion of identity is not improbable. These defendants are engaged in the perpetration of a fraud (*Hawke* v. *Corri*, 2 Hag. Con. 280) and threaten to persist in it. A distinguished court has recognized the jurisdiction of equity to interfere where there has been an unwarranted use of a man's name, the probable effect of which is to expose him to risk of future liability. It has approved the application of injunctive relief where no present property right was actually prejudiced but merely threatened and liability only anticipated. Even if no property rights were involved in the action then before it and if only the plaintiff's status and personal rights were invaded, it stated that it would hold without hesitation that an individual has rights, other than property rights, which can be enforced in a court of equity. (*Vanderbilt* v. *Mitchell*, 72 N. J. Eq. 910.) In *Edison* v. *Edison Polyform & Mfg. Co.* (73 N. J. Eq. 136, 143), a case in which no element of trade competition was involved, an injunction issued to restrain the unauthorized use of plaintiff's name. This remedy was applied by the New Jersey court upon the principle that a property right inheres in

a name and that a possibility of injury to the owner existed. Ideas founded on considerations of natural justice have in other instances been enforced and protective measures adopted by the courts of our own State. An early case decided by Chancellor KENT is *Aymar* v. *Roff* (3 Johns. Ch. 49). There a man who had gone through a marriage ceremony with an infant was ordered to " refrain from holding any conversation, or from having any intercourse, or correspondence with the said Eliza, so long as this order remains in force, under the pain of incurring a contempt." The principle announced in *Hodecker* v. *Strickler* (39 N. Y. Supp. 515; 20 App. Div. 245) has been the subject of adverse criticism (29 Harvard L. R. 673) and I think ought to be disapproved by us. The reasoning in such cases as *Randazzo* v. *Roppolo* (105 N. Y. Supp. 481); *Bell* v. *Clarke* (45 Misc. Rep. 272) and *Hall* v. *Smith* (80 Misc. Rep. 85) indicates to my mind a truer approach toward the realization of justice within the realm of equity. Among the most enlightened of modern equity cases is *Greenberg* v. *Greenberg* (218 App. Div. 104), where an injunction restrained a husband from prosecuting an action to obtain a judgment of divorce. The relief granted in that case was based upon the fact that " there are many conceivable uses to which such a judgment of divorce could be put, causing plaintiff expense, litigation, worry, annoyance and misrepresentation." It was to protect the present plaintiff from the same factors of legal wrong that the Special Term and a unanimous Appellate Division issued the injunction which is now so vigorously and successfully assailed. To hold that the Supreme Court is without power to exercise its discretion on such facts as this record reveals seems to me to run counter to the expanding trend of equity.

POUND, LEHMAN and KELLOGG, JJ., concur with HUBBS, J.; CRANE and O'BRIEN, JJ., dissent in part in separate opinions; CARDOZO, Ch. J., not voting.

Judgment accordingly.