ANNA NIVER, Plaintiff, v. JOSEPH NIVER et al., Defendants.

Supreme Court, Special Term, Kings County, December 19, 1951.

*Samuel Kalmanash* for plaintiff.

*Paul I. Stern* for defendants.

F. E. Johnson, J. The facts found are that the defendant husband, who at all times hereafter mentioned was, and still is, a resident and voter in this State, went to Mexico and in one day did all that was necessary to procure a " divorce " granted some months later. This was without the approval of the plaintiff wife and because of her refusal to agree to a divorce here.

After the decree was received from Mexico he and the codefendant went to Maryland and were married, without any inquiry being made of them as to the nature of the divorce decree upon which he was remarrying, or as to where or how it was obtained. Thereafter he and she, posing as husband and wife, have in this State, continued to live together, and she uses the title of, and claims to be the wife of, the defendant husband.

There can be no defense to this declaratory judgment action so far as voiding the Mexican divorce, upon which this alleged remarriage is based; it was completely ineffective as against the plaintiff, and in this State they are still husband and wife; the codefendant has no legal status whatever, and no legal right to pose as his wife. The main controversy relates to an injunction sought against him relative to his future conduct in seeking an out of the State divorce, and against his codefendant relative to her continued use of his name, and her continued holding herself out as his wife.

The subject does not seem to have been directly passed upon by the Court of Appeals since the rule of law was changed as to the validity of decrees obtained in other States of the Union. It is now the burden of this plaintiff, if her husband should now go out of the State to end his marriage with her, to take the initiative and carry the burden of proof as to the fraud practiced upon the court of the other State, in pretending that there was residence and domicile on his part. When *Haddock* v. *Haddock* (201 U. S. 562) was the law the New York spouse had no such difficulty and was able to ignore the decree; now (since the *Williams* v. *North Carolina* cases, 317 U. S. 287, 325 U. S. 226), if he obtains a decree in another State, she will be under such a burden that New York, out of consideration for its own residents, ought to protect her against having that unnecessary burden placed upon her.

His conduct in the past warrants paying no attention to any of his promises or guarantees; it is evident, as appears from certain parts of the testimony, that the desperate situation in which his codefendant is, and the promise of a child in

the near future, will cause him to do anything that can possibly give her the valid *appearance* of an honorable status. His promise during the trial is, therefore, held to be utterly worthless.

If before this defendant seeks, in another State, a decree good under the *Williams* case (*supra*), when he still is a resident hereof, and he is prepared to perpetrate a fraud both upon the foreign court and upon the New York resident spouse, there is every reason for a rule that will move the New York court to protect the New York resident.

The fact that the decree has not yet been obtained is no answer to the argument based upon the principle that we ought to protect our own citizens against what seems to be a threatened fraud and which, while it will not cause irreparable damage, will cause real damage and impose a real burden under the *Williams* cases (see cases cited in *Marcus* v. *Marcus,* 194 Misc. 464, 469). If such a rule can be invoked and applied at a time when there is no decree, it would seem that solicitude for our citizens should equally give them relief where there is a void Mexican decree, where the fraud has been carried already to the point where the other New York resident, who pretends to have been divorced, is pretending to have remarried, and is pretending to have a second wife, and is casting a public doubt upon the status of his only wife. She still being a New York resident, it is unfair to refuse such relief because the Mexican divorce is invalid; this is not logical, since invalidating the decree should include invalidating every collateral incident thereof — especially when the wife is *compelled* to sue to confirm her status.

It can plausibly be said that this plaintiff, who is married in this State to the defendant husband, has a property right in the status that thus arises, and the protection of her good name; she ought not be falsely labeled a discarded wife (presumably discarded for cause) especially if the alleged cause is transparently false, and the alleged divorce was obtained by a twenty-four-hour visit to Mexico. It would seem that to refuse to go the full length in wiping out every vestige of the *appearance* of such " divorce " is to refuse to be logical at the expense of a resident whom we should be anxious to protect, and against whom no estoppel or other relevant circumstance is urged.

Therefore, there seems to be such a similarity between the New York resident victim of a bad Nevada decree, and the New York resident victim of a bad Mexican decree, that when

the innocent New York resident appeals for protection against the false appearances, to her shame and damage, created by the fraud-practicing husband and a fraud-practicing paramour, posing as " wife " and the successor of the plaintiff, we ought to be diligent to destroy the *entire* false situation. This ought to be especially true when the New York resident, who has thus been libeled, slandered and embarrassed has had to bring a suit for her protection because there is no other way of rescuing her good name (*Sullivan* v. *Sullivan,* 271 App. Div. 1016).

The Court of Appeals has not said this should not be done, since whatever has been said was said prior to the change of the rule in *Haddock* v. *Haddock* (*supra*), and the substitution of a burden which the *Williams* cases (*supra*) impose upon the innocent New York spouse because of a State decree.

That court has not yet said that the injunctions that have been approved against foreign *State* divorces should not also be granted against Mexican divorces and all the consequences thereof. Judgment for the plaintiff for all the relief prayed for against her husband (*Garvin* v. *Garvin,* 302 N. Y. 96, and *Pereira* v. *Pereira,* 272 App. Div. 281). The questions of alimony, counsel fee and custody are respectfully referred to the Official Referee to hear and determine.

Plaintiff also seeks an injunction against the codefendant whom the husband thus endeavored to marry, and it is objected that there is authority in this State against such relief. *Baumann* v. *Baumann* (250 N. Y. 382) seems to turn on the absence of vital allegations from the complaint, and which were discussed on page 389, namely, that the complaint does not "allege that the defendant Ray Starr Einstein has alienated the affections of plaintiff's husband or that plaintiff has been *excluded by any act or conduct of said defendant from the marital society of her husband."* (Emphasis supplied.) The proof here (aside from allegations) is amply to the effect that this codefendant has done those very things, so it does not seem that the *Baumann* case (*supra*) is authority.

*Somberg* v. *Somberg* (263 N. Y. 1) seems also not in point, because there was no trial or testimony, but the wife's suit was dismissed for insufficient allegations; if she could not get any relief against her husband (who had not even gone through the motions of getting a divorce) she certainly could not get any relief against his companion, who had not even the color of title to the name of wife. In the present case the situation,

both in allegation and in proof, is so vitally different that the *Somberg* case (*supra*) is no authority.

In *Lowe* v. *Lowe* (265 N. Y. 197) the failure to obtain any relief against the so-called second wife was again due entirely to the failure to make proper allegations in the complaint. There was *no trial* in the *Lowe* case (*supra*), merely an appeal from a Special Term order by permission; it concerned the sufficiency of the allegations in the complaint. The certified question made it clear that it was what was missing from the complaint that was the important ground of appeal, namely, the failure to allege *grounds* for an injunction. Apparently the husband and his " second wife " appealed so she, too, was objecting that there was no *pleaded* ground for an injunction against her in that particular complaint. The answer admitted all the allegations of the complaint, but what was missing was the same thing that was missing in the *Baumann* case (*supra*), namely, the absence of any allegation that the other woman (p. 201) was " infringing upon marital or other rights of the plaintiff which a court of equity will protect by injunctive decree. (*Baumann* v. *Baumann*, 250 N. Y. 382.) " In the present case, the plaintiff has not only alleged but proven that both her husband and this woman have been representing her " as the wife of the defendant," which is, in view of liberal construction rules, equivalent to a charge that she is passing herself off as the plaintiff. It is also alleged and proven that since the alleged remarriage the husband has threatened to go to another State to seek a divorce; at the trial, the testimony warranted the finding that he and his alleged wife *are* planning to do that, in view of the desperate situation they are in, and that she will co-operate with him towards that end. The proof, therefore, warrants finding as a fact that both of them have been co-operating and intend to co-operate hereafter in " infringing upon marital * * * rights of the plaintiff ", as said in the *Lowe* case (*supra,* p. 201).

There seems to be, therefore, ample ground for granting an injunction against both of them for the reason that the factual situation and the pleading situation are outside of the only decisions that even seem to be relevant.

There is a decision in this department (*Chesny* v. *Chesny,* 278 App. Div. 586) which was not after trial, but upon appeal from a Special Term order dismissing two causes of action for insufficiency of allegation. The *second* cause of action was apparently *not* the ground of appeal; concerning it the Appellate Division said (p. 587): " *The allegations* of that cause

of action furnish no ground for the invocation of the general equitable power of the court to grant injunctive relief. (*Baumann* v. *Baumann*, 250 N. Y. 382; *Lowe* v. *Lowe*, 265 N. Y. 197.)'' The importance of the *absence* of allegations was that there was a controversy between the parties concerning community property in California; it seems obvious that the second cause of action was completely defective in that direction.

It would therefore seem that there is no binding authority in a situation like the one presented here, and the injunction sought for should also issue against the alleged second wife.