SELMA ROSENBAUM, Appellant, *v.* SALO ROSENBAUM, Respondent.

First Department, February 23, 1955.

*Marvin George Florman* for appellant.

*Benjamin Shedler* of counsel (*Gelfand & Shedler*, attorneys), for respondent.

BASTOW, J. Plaintiff appeals from an order denying her application for a temporary injunction and from an order granting defendant's cross motion to dismiss the complaint. The questions raised by appellant require us to consider the subject of granting injunctive relief against the prosecution of a divorce action in a foreign country.

It appears from the complaint and the uncontradicted averments in the affidavit of plaintiff that on June 15, 1954, she was

granted a decree of separation in New York County. On November 5, 1954, defendant instituted an action for a divorce against plaintiff in Juarez, Mexico. On November 12, 1954, the petition and writ in the action were left at plaintiff's home in Queens County. Defendant is a practicing psychiatrist with offices in New York City and is a resident of this State. He was in Mexico on the single day the action was instituted and then returned to New York.

Shortly after plaintiff had been served with the writ issued by the Mexican court, she commenced this action to permanently enjoin defendant from prosecuting the divorce action. At the same time she sought a temporary injunction by means of a show cause order containing a stay which has been continued by this court pending the determination of the appeal.

Concededly, defendant is bent on procuring a divorce from plaintiff. A reasonable inference that may be drawn from the papers is that he has not been and will not be too fastidious about his methods. His avowed reason for seeking a Mexican divorce is to circumvent any bigamy charge after he and the woman he intends to marry upon the entry of the Mexican decree shall have established their residence in this State. In pursuit of his objective, he has offered plaintiff a substantial sum of money, in addition to continuing the payments directed by the separation decree, if plaintiff would consent to a divorce. That the defendant is relentlessly pursuing this objective is best demonstrated by his interim application to vacate the stay granted by this court upon the ground that he was prejudiced thereby. He urged that because of the stay he would be unable to remarry during the year 1954 and thus would be deprived of filing a joint income tax return with his " new " wife.

One of the landmark decisions upon this subject is *Greenberg* v. *Greenberg* (218 App. Div. 104) which was decided by this court in 1926. There, as here, the plaintiff wife, a resident of this State, sought to restrain the defendant husband, also a resident of this State, from prosecuting a Mexican action for divorce against her. The complaint alleged that the plaintiff could not defend herself in that action and that she and her child would be irreparably damaged by such a judgment in terms of their status and property rights. The defendant admitted the allegations of the answer but argued that since the Mexican decree would be " absolutely null and void so far as this plaintiff is concerned " (p. 115), it could not in any way affect the status of the plaintiff or any of her property rights. This court held to the contrary, reversed the order of Special Term and granted

the temporary injunction. We held that the wife was " entitled to the aid of its [the New York] courts to prevent the commission of a threatened wrong by her husband, also a citizen of this State, by his obtaining a decree of divorce in another jurisdiction, in evasion of the laws of this State, in violation of her rights and in consummation of a patent fraud." (p. 116.)

Our decision in the *Greenberg* case was consistently followed in subsequent cases at nisi prius. (See *Jeffe* v. *Jeffe,* 168 Misc. 123; *Dublin* v. *Dublin,* 150 Misc. 694; *Richman* v. *Richman,* 148 Misc. 387, and *Johnson* v. *Johnson,* 146 Misc. 93.)

The question again reached this court in *Goldstein* v. *Goldstein* (258 App. Div. 211). We affirmed orders granting a temporary injunction and denying a motion to dismiss the complaint. There the plaintiff wife and defendant husband were residents of this State. The husband commenced an action for divorce in Florida and the wife sought equitable relief to restrain the prosecution of the action. The case reached the Court of Appeals upon a certified question as to the sufficiency of the complaint. (283 N. Y. 146.) The majority of the court held that it did not state a cause of action for injunctive relief inasmuch as Florida was not the matrimonial domicile of the parties and, therefore, the courts of that State, under the doctrine enunciated in *Haddock* v. *Haddock* (201 U. S. 562), were without jurisdiction to render a valid divorce against the plaintiff. It was reasoned that while plaintiff might be annoyed by the Florida action, she had nothing to fear therefrom because it would be a nullity. Dissenting opinions were written by Judge (later Chief Judge) LOUGHRAN and Judge (now Chief Judge) CONWAY. In the latter opinion the authorities relied upon in the majority opinion (*Baumann* v. *Baumann,* 250 N. Y. 382; *Somberg* v. *Somberg,* 263 N. Y. 1; *Lowe* v. *Lowe,* 265 N. Y. 197; *DeRaay* v. *DeRaay,* 280 N. Y. 822) were distinguished in the following language (p. 151): " In the *Baumann* case there was a document which purported to grant a divorce; in the *Lowe* case the foreign divorce action had resulted in judgment; in the *Somberg* case no action in a foreign State had been brought, and in the *DeRaay* case such action was threatened but had not been commenced."

The foundation upon which the decision in the *Goldstein* case had been built was undermined by the doctrine enunciated in *Williams* v. *North Carolina* (317 U. S. 287; 325 U. S. 226). In the *Williams* decisions, it was held that a divorce decree granted by a State to one of its domiciliaries is entitled to full faith and credit in another State, even though there was no personal service of the divorce papers, and that the finding by the foreign

State of domicile there is entitled to prima facie weight but is not conclusive in the sister State, and may be relitigated in the latter. The effect of the " full faith and credit " holding of the first *Williams* case upon the rule of *Goldstein* v. *Goldstein* (*supra*) was anticipated by this court in *Pereira* v. *Pereira* (272 App. Div. 281), and finally confirmed in *Garvin* v. *Garvin* (302 N. Y. 96). In the latter case, the court held that an injunction was properly granted to restrain a defendant husband during the pendency of a separation action from proceeding with an action for divorce in an insular possession of the United States inasmuch as the decrees of the courts thereof are entitled to full faith and credit under the Constitution. The court said (p. 101) that " Back in the days when *Haddock* v. *Haddock* (201 U. S. 562) made void foreign judgments of the kind being attempted here, our court held in *Goldstein* v. *Goldstein* (283 N. Y. 146), relying on the *Haddock* rule, that such injunctive relief was unnecessary for the protection of the rights and interests of the spouse who, staying at home and refusing to appear in the foreign suit, could not be bound thereby anyhow, under the *Haddock* rule. But all this has gone by the board since *Williams* v. *North Carolina* (317 U. S. 287, 325 U. S. 226) ".

The modification in *Garvin* v. *Garvin* (*supra*) of the rule relating to the granting of injunctions as enunciated in the *Goldstein* case was limited to restraining divorce actions commenced in a foreign State as distinguished from a foreign country. The decree of the latter is recognized as a matter of comity. Accordingly, in several decisions the lower courts have applied the rule of the *Goldstein* case to foreign decrees not entitled to full faith and credit, both before the decision in *Garvin* v. *Garvin* (*supra*); (*Newman* v. *Newman*, 181 Misc. 256; *Armetta* v. *Armetta*, 68 N. Y. S. 2d 880; *Gaskell* v. *Gaskell*, 189 Misc. 504) and after (*Borax* v. *Borax*, 136 N. Y. S. 2d 164; *Benton* v. *Benton*, N. Y. L. J., Sept. 16, 1952, p. 495, col. 3; *Lipman* v. *Lipman*, N. Y. L. J., June 11, 1953, p. 1969, col. 2; *Kramer* v. *Kramer*, N. Y. L. J., Dec. 16, 1954, p. 6, col. 5).

It seems to us that there are sound reasons that justify the granting of injunctive relief upon the facts here presented. These reasons, we submit, are founded upon sound equity jurisprudence and enlightened public policy. The passing of the years has served to emphasize the reasons set forth in the minority opinions in the *Goldstein* case that the threatened void judgment would " genuinely prejudice the wife in the maintenance of her objective rights." (p. 149.) Time has shown us that there are many uses to which such a judgment

may be put to cause a wife expense and litigation. It is of little help to tell the wife that the foreign decree is invalid and she has nothing to fear; that she may subsequently commence an action for a declaratory judgment. We have only to look at the present record to find the facts that cause vexation and difficulty not only to the parties but to the courts. Here, the husband in his answering affidavit complains about the permanent alimony allowed in the separation action although he did not appeal from the decree providing for such payments. He states that it amounts to 35% of his net income before taxes for the year 1953 and 42% thereof for the year 1954. Yet, he is willing and anxious to enter upon another marital venture. It must be recognized from experience that in such event the court will be met with the problem upon a motion to reduce the amount of permanent alimony as to the division of a stated amount of income between the former wife on the one hand and the husband and present wife on the other. As Judge CONWAY said in his dissenting opinion in the *Goldstein* case: "He must support two wives and the amount of support for the plaintiff here may well be affected by the support necessary for the so-called second wife. That is indeed a situation which equity should envision and against which it should guard one of our residents." (p. 156.)

If we permit defendant to consummate his Mexican divorce, we will be giving added leverage to his efforts to pry a valid divorce from plaintiff. She and the infant children, residents of this State, enjoy an entrenched position by virtue of the marital status which defendant is endeavoring to destroy. Defendant promises to sap the security of plaintiff's household by holding out another household which will have no legal basis under our laws as an authentic one. This second home, as heretofore pointed out, will make inroads into defendant's income, endangering the support and maintenance provision of the separation decree. Moreover, society, being what it is, will accept the new wife and household at face value and gradually relegate plaintiff and her children to an inferior and insecure social position. Plaintiff, left to her own inadequate resources by an indifferent State, may decide the game is not worth the candle, capitulate and consent to a divorce. The State, by its inaction, will then have encouraged the collusive disintegration of a marriage between two of its residents.

Where a defendant has admitted his efforts to cajole or coerce his wife into consenting to a collusive divorce, where it clearly appears that he seeks this worthless Mexican divorce in order to exert an added pressure on his wife, and where the parties.

are so unequally matched, the State, to protect its citizens from oppression and maintain its own dignity, should restrain the actions of a party within its jurisdiction. The potential for such harm is too great and too real to be ignored. The test should not be the intrinsic merits of the foreign decree, but the harm that an admittedly invalid decree in the hands of defendant can bring to the plaintiff.

Moreover, it seems to us that a citizen of this State should not be subjected to the indignities and injuries of an admittedly worthless decree of a foreign country obtained by another citizen of the State domiciled here when it is within our power to restrain such action before it becomes an accomplished fact. Once such a decree is obtained, it is the breeding ground for further litigation between the husband and first wife and frequently litigation between the two wives after the death of the husband (cf. *Imbrioscia* v. *Quayle,* 197 Misc. 1049, revd. 278 App. Div. 144, affd. 303 N. Y. 841, and 40 Col. L. Rev., pp. 1255, 1259). The result is confusion and chaos in the administration of justice in this troublesome field of the law.

Litigation just as groundless and less dangerous has been enjoined by the courts of this State as vexatious. If a person brings three trifling Municipal Court actions " with a corrupt or malicious intent to vex and annoy " another, he is guilty of barratry and may be sent to jail (Penal Law, §§ 320–323). Is a lawsuit designed to unsettle the social and the property rights of a wife and two children any the less vexatious or annoying?

The orders appealed from should be reversed. Plaintiff's motion for a temporary injunction should be granted and defendant's cross motion to dismiss the complaint should be denied, with costs to the appellant.

COHN and BREITEL, JJ. (dissenting). The action has been brought by a wife to procure a permanent injunction against her husband restraining him from obtaining a Mexican divorce. Before us now is the dismissal of the complaint and denial of the motion for a temporary injunction to prevent the husband from proceeding with the divorce action he has instituted in Mexico.

The parties were married in New York City in 1942. They have two children and since their marriage have been continuously, and still are, residents of this State. Since 1954, the parties have in fact been last separated and the husband has expressed the wish to have a divorce and to remarry. To these wishes the wife has been rightfully resistant. In 1954, the wife obtained a judgment of separation from the husband under which

she receives $750 a month for the support of herself and the children. Since the separation judgment, the husband has again tried, but without success, to persuade his wife to " consent " to a divorce and has offered her various financial incentives, all of which she has very properly declined.

There is no justification for the conduct of the husband in this case. The question that is involved, however, is whether, as a matter of policy, another remedy should be added to the several that a spouse has in matrimonial litigation. It has been the policy in this State to deny an injunction to restrain prosecution of a divorce action in a jurisdiction whose judgments are not entitled to full faith and credit.

The law has been clear, insofar as it is ever clear in the matrimonial field, that a spouse is not entitled to obtain an injunction to restrain the prosecution of a foreign divorce not entitled to full faith and credit in this State. (*Goldstein* v. *Goldstein,* 283 N. Y. 146.) That case, decided in 1940, held precisely that, and applied the rule to divorces sought in other States of the Union, and, by implication, to divorces sought outside the United States. Thereafter, following the two holdings by the Supreme Court of the United States in *Williams* v. *North Carolina* (317 U. S. 287; 325 U. S. 226) the rule no longer applies to divorces sought in sister States. (*Garvin* v. *Garvin,* 302 N. Y. 96; *Pereira* v. *Pereira,* 272 App. Div. 281.) The principle remained the same but its application was lifted in part, because, under the rulings in the *Williams* cases, divorce judgments in sister States were entitled to full faith and credit — at least, to prima facie full faith and credit — under the Constitution. The distinction between the *Goldstein* and the *Garvin* cases turns on whether the foreign divorce judgment was a nullity or whether it had a legal status that threatened the rights of the resident spouse against whom the migratory spouse had obtained a divorce. It was always recognized that a foreign divorce, no matter how null as a matter of law, would have some practical impact on the resident spouse. But it was held, nevertheless, that a divorce judgment, null in law, would not supply a basis for injunctive relief. Where there was practical impact, the resident spouse, in proper time, could obtain a declaratory judgment upon a showing of such impact. (*Baumann* v. *Baumann,* 250 N. Y. 382.) As a consequence, nothing has occurred to change the application of the controlling authority of the *Goldstein* case to foreign actions which can only result in a divorce judgment entitled to no faith and credit in this State. In recent years the Special

Terms have so held, uniformly, following what they believed to be the mandate of the appellate courts.*

There has been no change of circumstances which would warrant a change in policy. The orders should be affirmed.

BREITEL, J. (dissenting). In dissenting, the following comment is added: With respect to the consideration of policy suggested by this case, we are obliged to look beyond its particular facts. Involved is that there is already a large number of remedies available to the wronged spouse. Notably, where the wronged spouse is a wife she is entitled to counsel fees. There is a hazard in multiplying remedies that increase the price, and the modes of collusion, at which " freedom " is bought, rather than serving to prevent the sale. The question remains whether any useful purpose will be served in adding another weapon to the large number now available to contestants in this area. The need is not for more weapons. The crying urgency is for greater effectiveness and realism in those that now exist. The goal is to protect the innocent spouse and the even more innocent children of the marriage, rather than to enhance the activity of those that are merely litigious for purposes ulterior to the preservation of the family. Perhaps that is not the situation in this case, but it is the situation in far too many of the cases in this area. It is submitted that the hazards are greater than any useful purpose to be served. Moreover, there has been much vacillation, and confusion compounded, in the field of matrimonial law, without compensating stabilization or rationality. It should not be added to in the absence of the strongest compulsion.

PECK, P. J., and BOTEIN, J., concur with BASTOW, J.; COHN and BREITEL, JJ., dissent in opinion; BREITEL, J., dissents further in separate opinion.

Orders reversed, in accordance with the opinion herein, with $20 costs and disbursements to appellant. Settle order. [See post, p. 942.]

---

* (Goldstein v. Goldstein, N. Y. L. J., July 6, 1951, p. 32, col. 6, DICKSTEIN, J.; Hess v. Hess, N. Y. L. J., Nov. 9, 1950, p. 1118, col. 7, NATHAN, J.; Winikoff v. Winikoff, N. Y. L. J., July 17, 1950, p. 76, col. 6, RABIN, J.; Armetta v. Armetta, 68 N. Y. S. 2d 880, COLDEN, J.; Gaskell v. Gaskell, 189 Misc. 504, HECHT, J.; Newman v. Newman, 181 Misc. 256, HALLINAN, J.; Borax v. Borax, 136 N. Y. S. 2d 164, BREITEL, J.; Benton v. Benton, N. Y. L. J., Sept. 16, 1952, p. 495, col. 3, BREITEL, J.; Fromer v. Fromer, N. Y. L. J., March 31, 1954, p. 8, col. 8, RABIN, J.; Kramer v. Kramer, N. Y. L. J., Dec. 16, 1954, p. 6, col. 5, M. M. LEVY, J.; Lipman v. Lipman, N. Y. L. J., June 11, 1953, p. 1969, col. 2, McNALLY, J.; Sanguinetti v. Sanguinetti, N. Y. L. J., June 12, 1953, p. 1985, col. 6, NATHAN, J.)