**BROADVIEW CHEMICAL CORPORATION, Plaintiff-Appellant,**

v.

**LOCTITE CORPORATION, Defendant-Appellee.**

No. 383, Docket 72–1955.

United States Court of Appeals, Second Circuit.

Argued Feb. 20, 1973.

Decided March 13, 1973.

Granger Cook, Jr., Chicago, Ill. (David A. Anderson, James P. Hume, Hume, Clement, Hume & Lee, Ltd., Chicago, Ill., of counsel), for plaintiff-appellant.

Walter D. Ames, Washington, D. C. (James H. Marsh, Jr., Watson, Cole, Grindle & Watson, Washington, D. C., and J. Rodney Reck, Newington, Conn., of counsel), for defendant-appellee.

Before FEINBERG, MULLIGAN and TIMBERS, Circuit Judges.

MULLIGAN, Circuit Judge:

This is an appeal by Broadview Chemical Corporation (Broadview) from a judgment of the United States District Court for the District of Connecticut, M. Joseph Blumenfeld, *Chief Judge,* filed on May 10, 1972, declaring that certain anaerobic sealant compositions developed by Broadview do not infringe certain patents owned by the appellee, Loctite Corporation (Loctite). The judgment of the district court is affirmed.

Although Broadview commenced this action under the Declaratory Judgment Act, 28 U.S.C. § 2201, and succeeded in obtaining an adjudication of non-infringement, its appeal urges that the judgment entered below was erroneous since it was unnecessarily limited in failing to specify why there was no infringement and also in failing to adjudicate that the Loctite patents in question were invalid. We are advised that an understanding of the precise mechanism by which anaerobic sealants function, is not important to the issues on appeal.

This of course is a source of deep regret and disappointment but we shall proceed in any event to the non-chemical aspects of the appeal.

I

The parties to this litigation are hardly strangers to the judicial process. On June 1, 1964 Broadview first filed an action in the District Court of Connecticut seeking a declaratory judgment that the Loctite patents in question were invalid and not infringed by some 32 separate compositions manufactured by Broadview functioning as anaerobic sealants. This action was terminated by a settlement and the parties thereafter entered into a Consent Decree filed on February 15, 1967, in which Broadview admitted that the Loctite patents were valid and that it had infringed them. On September 21, 1967 Loctite moved to punish Broadview for contempt for violating the Consent Decree by manufacturing and marketing another line of sealant compositions. After trial, Chief Judge M. Joseph Blumenfeld found Broadview to be in contempt for infringing certain Loctite patents. On appeal this Court affirmed the District Court's finding of contempt for all but two of the Broadview formulations and remanded the case for further proceedings. Broadview Chem. Corp. v. Loctite Corp., 406 F.2d 538 (2d Cir.), cert. denied, 394 U. S. 976, 89 S.Ct. 1472, 22 L.Ed.2d 755 (1969). Judge Blumenfeld then filed an order on May 10, 1969 enjoining Broadview from infringing the Loctite patents in suit and further providing that for each violation of this order or the Consent Decree of February 15, 1967, the violator would be bound to pay Loctite $2000.00.

Even before the injunction issued, Broadview instituted the present declaratory judgment action seeking an adjudication that certain new anaerobic sealant compositions (KBK) did not infringe the Loctite patents. Judge Blumenfeld dismissed the complaint and this Court reversed (Broadview Chem. Corp. v. Loctite Corp., 417 F.2d 998 (2d

Cir. 1969), cert. denied, 397 U.S. 1064, 90 S.Ct. 1502, 25 L.Ed.2d 686 (1970)) finding that there was an existing justiciable controversy and not a moot or academic dispute. This assessment of justiciability by Judge Waterman based in part on the prior history of litigation between the parties, has been more than justified by subsequent events. On remand Broadview filed an amended complaint on May 11, 1970 seeking a judgment of non-infringement not only with respect to the KBK compositions but also with respect to new (Manaka) compositions. At this point a rash of motions ensued with Broadview arguing that Loctite was unnecessarily delaying an opinion on infringement and Loctite urging that Broadview had added still another formulation (Manaka II) not within the amended complaint. We see no reason to detail the bitter legal exchanges which transpired.[1] Suffice it to say that Loctite gradually, albeit grudgingly, admitted to the non-infringement of *its* patents as evidenced by a judgment in part entered on June 30, 1971, a judgment in part entered on March 1, 1972 and a final judgment entered on May 10, 1972. In sum, the judgments declare that specified KBK and Manaka sealant compositions of Broadview do not infringe the Loctite patents in suit. It would seem to be undisputed that the entire KBK and Manaka lines submitted by Broadview have been held not to be infringing and that at long last total victory had been achieved.

## II

Broadview claims however that its victory here is Pyrrhic and urges that the court below committed error in failing to include in its judgment that the Broadview formulations do not infringe because they do not employ monomers, inhibitors, initiators and accelerators of the type covered by the claims of the Loctite patents in suit. Broadview now seeks a remand instructing the District Court to enter a judgment detailing the reasons why the patents in issue are not infringed by Broadview's manufacture or sale of anaerobic sealants made in accordance with either the KBK or Manaka formulations. Appellant cites no authority for the proposition that greater specificity is required in a judgment of this character.[2] The evaluation of non-infringement made by Loctite which Broadview had sought by motion and strenuously sought to expedite was eventually accepted by the Court and vindicated the Broadview formulations. Broadview's real concern here in our view is that Loctite has sent a letter to its dealers in which it states that although Broadview has submitted certain products which were non-infringing, they were laboratory samples and "we do not know whether they can be used commercially." The Loctite letter further indicated that it would monitor the Broadview sealants to determine whether their commercialized products infringe the Loctite patents. The letter is authored by Loctite's Market Manager and its tenor is typically sales oriented exhorting its dealers to stand fast and remain loyal to the Loctite product. It is undisputed that the principal purpose of a declaratory judgment is to clarify and settle disputed legal relationships and to relieve uncertainty, insecurity and controversy. E. Borchard, Declaratory Judgments 299 (2d ed. 1941). The judgment herein *our view did clarify and determine the disputed jural* relationship. Although the declaratory

1. We do note, however, that on September 16, 1971 this Court affirmed without opinion a determination by the District Court that the Manaka II compositions were within that court's jurisdiction. A petition for rehearing was denied on October 13, 1971 and the Supreme Court denied a petition for writ of certiorari on February 22, 1972 (405 U.S. 920, 92 S.Ct. 949, 30 L.Ed.2d 790).

2. On the other hand we recognize that district courts have broad discretion in moulding their decrees to fit the circumstances of the particular case. See E. Borchard, Declaratory Judgments 296 (2d ed. 1941).

judgment is a highly commendable and civilized remedy having its genesis in the equitable writs of Quia Timet and Bills of Peace, it is not a panacea and it cannot effectively terminate business frictions any more than it can harmonize personal relationships. See Baumann v. Baumann, 250 N.Y. 382, 165 N. E. 819 (1929). The non-infringement of the formulations in question has been adjudicated but the competition between the parties continues in the market place and it should not be the province of the federal court to act as a continuing monitor or arbiter of the sales claims which either may make. In view of the acrimony which has marked the relationship between the parties for the past nine years, it is questionable whether any declaratory judgment no matter what its contents, will eliminate the ill will which permeates the relationship here. We see no reason to disturb the judgment in the form adopted by the trial court.

### III

Broadview's second argument on appeal is that the court below erred in refusing to hold the Loctite patents invalid. Broadview sought no declaration of invalidity in the complaint or amended complaint below. Broadview simply sought a declaration of non-infringement. There was a motion made to amend the complaint to challenge validity "in the event that Loctite charges that any of such patents are infringed." However there was no charge of infringement. While the Supreme Court has indicated that it is the better practice for lower courts in infringement suits, to inquire into the validity question, Sinclair & Carroll Co. v. Interchemical Corp., 325 U.S. 327, 65 S.Ct. 1143, 89 L. Ed. 1644 (1945), this has not been construed as a peremptory direction but rather a matter of the trial court's discretion. Thus, where there has been a disclaimer of infringement and the trial court has not adjudicated the issue of validity, this Court need not rule on the question. See McCurrach v. Cheney

Bros., 152 F.2d 365 (2d Cir. 1945). Broadview's sole basis for urging invalidity is the difficulty Loctite encountered in determining whether or not there had been infringement. Assuming arguendo that this is a proper basis upon which invalidity may be established (see Corning Glass Works v. Anchor Hocking Glass Corp., 253 F.Supp. 461 (D.Del.1966), rev'd, 374 F.2d 473 (3d Cir.), cert. denied, 389 U.S. 826, 88 S.Ct. 65, 19 L.Ed.2d 80 (1967)) (a proposition we express no view upon) there is nothing here to establish that the delay or difficulty was of such character. Surely this must depend upon the intricacies and inherent complexities of the invention as well as the number of formulations submitted for analysis and report. Appellant indeed sought a declaration of invalidity as a sanction for Loctite's alleged dilatory tactics in making the requested evaluation. We cannot determine how much the delay was due to the difficulty in making the tests and how much was prompted by Loctite's reluctance to finally admit defeat.

We finally are faced with the Consent Decree of February 15, 1967 in which the parties to this appeal solemnly agreed that the patents in issue were valid and had been infringed. Does this decree estop Broadview from questioning the validity of the Loctite patents? This question has been decided in this Court in Addressograph-Multigraph Corp. v. Cooper, 156 F.2d 483, 485 (2d Cir. 1946), where we said:

> [W]e think on grounds of public policy we ought to rule that in a decree, at least in one entered by consent, either an adjudication of infringement, or a grant of some relief from which infringement may be inferred, is essential before any effect of res judicata can be given to it on the issue of validity.

In that case there was no adjudication of infringement and no res judicata effect was given to the decree. Here of course infringement was adjudicated

and the decree recited that Broadview had made a monetary payment for infringement.

Appellant urges that *Addressograph* is no longer good law in view of the holding of the Supreme Court in Lear, Inc. v. Adkins, 395 U.S. 653, 670–671, 89 S. Ct. 1902, 23 L.Ed.2d 610 (1969), that a licensee is not estopped from questioning the validity of a patent which he recognized in the license agreement. Appellant cites no authority for this extension of *Lear* to the consent decree cases where there has been a prior adjudication of infringement.

Business Forms Finishing Serv., Inc. v. Carson, 452 F.2d 70 (7th Cir. 1971), relied upon by appellant does not repudiate *Addressograph* but relies on the distinction made there and where there was no finding of infringement, it was held that there was no estoppel to challenge validity. The only other post *Lear* appellate case we have found is Schnitger v. Canoga Elec. Corp., 462 F.2d 628 (9th Cir. 1972), which squarely holds that a prior decree finding infringement and validity is res judicata in a subsequent declaratory judgment action.

In light of the record before us which fails to establish any pleading or proof of invalidity, we see no warrant here to extend *Lear* or to overrule *Addressograph*.

We would conclude with the hope that the parties, who have been locked in almost continuous litigation for nine years with four appeals to this Court, will return to their laboratories instead of their lawyers' offices so that more and better anaerobic sealants might be made available to the public. We have grave doubt, however, that any *Pax Anaerobia* will ensue.

Affirmed.